The evidence clearly brings the plaintiffs within the terms of the statute, and, for the reasons assigned, the judgment appealed from is affirmed, at appellants' cost.

Rehearing refused by Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.

---

(91 South. 719)

Nos. 24258, 22770.

WINN v. STRICKLAND et al.

STRICKLAND et ux. v. WINN.

(Jan. 31, 1921. On Rehearing, April 22, 1922.)

*(Syllabus by the Court.)*

On Rehearing.

1. **Mortgages** &#9758;532—One taking subject to mortgage with life estate reserved cannot acquire title upon foreclosure free from the life estate.

Where the owner of a half interest in land, in order to secure himself against a mortgage placed upon the whole land with his consent but for the sole benefit of his co-owner, takes a deed to the other half interest, wherein it is declared that, as the consideration is less than the real value, the vendor reserves a usufruct or life estate in the part deeded, the vendee will not be allowed to acquire at a foreclosure under such mortgage the whole of the land free of the life interest so reserved by his vendor.

2. **Estoppel** &#9758;10, 99, 101—Cannot be extended beyond natural and reasonable import of acts or conduct relied on; pleadings, testimony, etc., relating to deed relied on not estoppel as to alleged duplicate containing additional provision.

In no event can an estoppel be extended beyond the natural and reasonable import of the acts or conduct relied on to create it.

3. **Life estates** &#9758;4—Usufructuary may be expelled for waste with or without compensation.

The usufructuary who commits waste on the estate may be expelled with or without compensation, according to circumstances; and, if he wishes to prevent the re-entry of the owner, he must repair the waste without delay.

4. **Appeal and error** &#9758;931(1)—Finding of trial court adopted when manifest error not pointed out.

Where no manifest error has been pointed out in the finding of facts by the trial judge, such finding of the facts will be adopted by the appellate court.

*(Additional Syllabus by Editorial Staff.)*

5. **Quieting title** &#9758;43—Admission of deed containing reversionary clause not relied on in pleadings held not to enlarge pleadings.

In a suit to have a deed declared a simulation, etc., or in the alternative for a recognition of plaintiff's life estate without any prayer for recognition of a reversionary interest, the admission in evidence of a deed reserving such interest did not enlarge the pleadings; it being otherwise admissible to show the alleged simulation and fraud.

6. **New trial** &#9758;172—Failure to repeat objections to evidence made on former trial held not consent to enlargement of pleadings.

The offer on a second trial of a deed reserving a reversionary interest, for recognition of which plaintiff had not prayed, was a mere formality, and defendant's failure to repeat the formal objections already made was not a consent to the enlargement of the pleadings; her general objection to all of plaintiff's testimony being intended to cover all documents objected to at the time.

Appeal from Judicial District Court, Parish of Jefferson Davis; Winston Overton, Judge.

Action by Hezekiah Winn against Mrs. Dorothy Strickland and husband, and suit by Learcus Strickland and wife against Hezekiah Winn. From a judgment for defendants in the first action and for plaintiffs in the second action, Winn appeals. Judgment in the first action reversed, and judgment ordered for plaintiff, and judgment in the second action amended and affirmed on rehearing.

Cline & Bell, of Lake Charles, and Modisette & Adams, of Jennings, for Winn.

McCoy & Moss, of Lake Charles, for Strickland and wife.

By the WHOLE COURT.

DAWKINS, J. In May, 1915, Hezekiah Winn brought an action against Mrs. Dorothy Strickland and her husband, Learcus Strickland (the husband being joined as a defendant for the purpose of aiding and authorizing his said wife), in which certain demands were made, but all of which have since disappeared from the case, except one for the recognition and enforcement of a life estate or usufruct in an undivided one-half interest in a piece of real property called the Oaks plantation, and a disputed reversionary clause in the same act by which, in event Mrs. Strickland died before Winn, the said one-half interest was to revert to him in fee simple.

The case was before us in a former appeal, No. 22011, by Mrs. Strickland and her husband (he having appeared for the first time to authorize the appeal), from a judgment in favor of Winn recognizing and sustaining in him the usufruct or life estate, and, inasmuch as it appeared that the defendant was a married woman, who had neither been authorized by her husband nor the district court to stand in judgment (the husband, a nonresident, not having been served with citation), we remanded the case to the lower court "to determine whether the defendant had authority to defend the suit and to stand in judgment, and for further proceedings not inconsistent with the foregoing opinion." Winn v. Strickland, 147 La. 115, 84 South. 515. The only question discussed or determined in the opinion was that of the authorization of Mrs. Strickland.

The case went back, several pleas and exceptions were filed and urged, the court, at the instance of plaintiff, authorized Mrs. Strickland to defend the suit, the plaintiff took a nonsuit on all demands save as to the usufruct and reversionary claims, the case was again submitted, mainly upon the same record, and the lower court, in that instance, rendered judgment in favor of defendant, rejecting plaintiff's demands, and the case is again before us, but this time on the appeal of plaintiff.

### The Facts.

For several years prior to the 31st day of May, 1912, the plaintiff Winn and defendant Mrs. Strickland had owned in indivision (one-half each) a piece of property situated in Jefferson Davis parish, near the town of Lake Arthur, called the Oaks plantation, which had been devoted mainly to rice farming, under conditions mutually satisfactory. Winn managed the plantation, financed its operation, furnished the necessary tools and implements, and Mrs. Strickland received one-fifth of the crop and paid half of the water rent. On the date mentioned the parties met in a hotel in the town of Jennings, La., and, after some discussion, Mrs. Strickland began an attempt to write up an act of transfer by Winn to her of his undivided half of the property, and a number of forms were prepared by her before one was had which both were willing to sign. Eventually, however, terms were found, as each thought, which were mutually satisfactory, and they proceeded to a notary public and signed, what was supposed to have been duplicate copies, in the presence of the notary and witnesses, without either being read at the time. Both were written entirely in the hand of Mrs. Strickland. Each took a copy, and the one received by Winn contained the following clause or paragraph, to wit:

"To have and to hold the said one-half of the said one-half interest in said tract of land aforesaid with the appurtenances, estate, and title thereunto belonging or in any wise thereunto appertaining to the said Dorothy Strickland and her heirs and assigns forever, and the said Hezekiah Winn covenants to and with the said Dorothy Strickland that he is lawfully seized and possessed of said land and has a

good right to convey said interest aforesaid. But, the consideration of this conveyance being less than actual value of said interest, said Hezekiah Winn reserves his life estate in said land and the right to lease same. And the said Hezekiah Winn does further covenant and bind himself, his heirs, executors, and representatives, to warrant and forever defend the title to said one-half interest in said land aforesaid to the said Dorothy Strickland against the lawful claims of all persons whomsoever.

*"It is further agreed by and between the said Dorothy Strickland and Hezekiah Winn that, inasmuch as the said Dorothy Strickland receives an income annually from above-described property, and pays less than the actual value of same, that in the event that Dorothy Strickland dies before Hezekiah Winn, this deed shall become null and void, otherwise remain in full force and effect, and Hezekiah Winn binds no part of his estate, except the above-described property, to the perfecting of this deed."*

Mrs. Strickland's copy was the same as Winn's throughout, except that it did not contain, and there was omitted therefrom (13 lines on Winn's original), the concluding portion underscored or italicized above. Plaintiff and defendant were the only witnesses present while they were endeavoring to formulate a transfer satisfactory to each, and they flatly contradict each other as to what took place. Winn says he refused to sign without the disputed portion being included, and would not have done so otherwise; while Mrs. Strickland is equally as positive that she refused to agree to that stipulation and also would not have signed with it in the act. The fact remains, however, that both were in her handwriting and were signed by her and Winn.

It is admitted that Mrs. Strickland agreed not to file the transfer for record, except in event of Winn's death, or some other contingency rendering it necessary for her protection.

Early in 1913 Winn left his home in Jefferson Davis parish, intending to go to Houston, Tex., on business, but says thereafter he had a complete mental lapse, and remembers nothing that took place until he recognized a former acquaintance on a street car in the city of Honolulu, Hawaiian Islands; that his mind again became blank, and he remembers nothing more until he found himself in Hongkong, China; that his mind again failed, and he next found himself on a ship in mid-ocean, working his way back; there was a fourth lapse, and he found himself again in Honolulu, which was followed by a fifth, at the end of which he was in San Francisco, Cal. This condition covered a period of several weeks.

In the meantime Winn's family and friends had become alarmed, and it was generally believed that he had either committed suicide or met with foul play in some way. His creditors, several in number, became uneasy and started proceedings to protect their interests. Mrs. Strickland, who lived in Greenbrier, Tenn., came to Louisiana, and after consulting a lawyer, her counsel in the present case, placed on record her copy of the transfer from Winn. Winn finally returned to his home in the early summer of 1913 and found the act on record. An acrimonious correspondence ensued between the parties, but nothing ever came of it to change the status of things.

At the time of the execution of the transfer from Winn to Mrs. Strickland there rested upon the entire plantation a mortgage (which had been extant since 1907) in favor of one Amanda Miller securing a note for $3,000, signed by both plaintiff and defendant, and on March 2, 1915, the holder thereof instituted suit thereon via ordinaria, Winn confessed judgment, Mrs. Strickland was cited through a curator ad hoc, and on May 8, 1915, the plantation was sold and bought in at execution sale by Mrs. Strickland for $7,000. On the same day Winn filed this suit.

Plaintiff first charged that the act was a pure simulation, made to protect defendant against a damage suit with which it was

thought Winn was threatened, and sought to annul the deed; but, as heretofore indicated, that claim was subsequently abandoned, and he now seeks only to have recognized the usufruct and reversionary clauses.

Defendant Mrs. Strickland averred that the act was intended merely as a mortgage or pignorative contract to secure her against loss on account of the Miller mortgage note, amounting to $3,000, of which she was a maker (though concededly the entire debt was that of Winn alone), and to secure other indebtedness to her by him aggregating about $2,000. However at the time of the transfer she admits she surrendered the notes representing the $2,000 to Winn, and which does not seem consistent with the idea that the, conveyance was being made to secure them.

### Opinion.

With respect to the controversy as to which should be held to have been the contract of the parties, the one with or the, one without the reversionary clause, we think the situation is no different from what it would have been if there had been but one act, with all of the stipulations written in it. The two documents which the parties signed at one and the same time were intended, and were, in fact and law, but one agreement, and must be construed together. The testimony of the two only witnesses is so directly conflicting that one offsets the other, and we are compelled to construe the matter as if we had only the documents before us. Under this view, the parties, having signed both as one, are conclusively presumed to have known what was in them, and to have consented to all of the terms. Davis Bros. Lumber Co., Limited, v. Franks, 146 La. 803, 84 South. 101. The one does not contradict, but merely supplements the other, and can be readily construed together as one entire contract. We therefore conclude that the reversionary clause was a, part of the agreement and binding upon the parties.

The next question is as to the effect of the sale under the Miller mortgage and judgment and the purchase by Mrs. Strickland of the property. Here, again, the testimony of the two only witnesses is directly conflicting. Winn says the act of May 31, 1912, was executed to protect Mrs. Strickland against a threatened damage suit against him, while she says it was intended as a security as above outlined. Admittedly the recited consideration of $5,000 cash was not paid. In view of the extraordinary and confusing state of the evidence, we can see no greater reason for believing the one any more than the other, and we think the safest course, and the one most consistent with the terms and stipulations of the act itself, is to construe it as a sale. If it was not a sale, in which the $2,000 indebtedness to Mrs. Strickland by Winn was a part of the consideration, why did she surrender to him the notes representing that amount? And, again, why would there have been any necessity for reserving a usufruct in property which he really owned, to say nothing of the reversionary feature. The act itself recites that the price stipulated was less than the value of the property, and that this was the reason for the reservations. We also think the record shows that the property was really worth considerably more than the price paid.

We conclude, further, that the remainder of the purchase price above the $2,000 which Winn owed Mrs. Strickland, was the $3,000 due Mrs. Miller, and that, by acquiring the property, she likewise assumed the obligation of paying the debt, as a part of the consideration. Whether the usufruct and reversionary rights be construed as a grant or reservation, we think the duty was equally upon her to pay the Miller debt, and not permit the property to be sold. If it had been bought in by a third person, Winn's rights would undoubtedly have been lost, since the mortgage antedated the sale, and

he was, as to the mortgagee and third persons, still a maker of the note; but, in the view we have taken, he would have still had his action in damages against Mrs. Strickland. However, inasmuch as she bought the property in and paid the price in satisfaction of an obligation which she herself owed, it amounted to nothing more than paying the debt. Article 2443, R. C. C.; Scott v. Leonard, 106 La. 317, 30 South. 841. Therefore the usufruct and reversionary rights in Winn's favor remained unaffected.

### No. 22770.

This brings us to a consideration of the case of Learcus Strickland and Wife v. Hezekiah Winn, which was consolidated with that of Winn v. Strickland, above disposed of, for the purpose of decision in this court.

This was a suit by Mr. Strickland, as the head of the matrimonial community, and in the alternative by Mrs. Strickland, if it were found that she owned the plantation as her separate property, in which certain movable property was sequestered, and the value of other property alleged to have been removed or destroyed by Winn was sued for, and in which he was further enjoined from interfering with or trespassing upon the premises, upon the theory that either the community or Mrs. Strickland had become the unconditional owner of the plantation at the execution sale, free from any rights or claims of Winn whatsoever. There was also a demand for damages, for rents, etc.

The lower court, upon the theory that the plantation belonged to Mrs. Strickland under the execution sale, freed from any rights of Winn, sustained the seizure, gave judgment for the property removed and destroyed, allowed a small amount for damages, found that there was no rent due, reserved plaintiff's right to sue for certain items, gave judgment for $100 money borrowed, and perpetuated the injunction. Winn appealed.

However, the conclusion which we have reached with regard to the usufruct or life estate still existing in Winn's favor destroys the foundation upon which that judgment rested; i. e., that the immovables by destination had passed to Mrs. Strickland under the execution sale of the plantation. A usufructuary has the right to use the things subject to the usufruct, as he may see fit (except that he cannot alienate the immovables), with the right in the owner to exact security, unless it be waived in the act granting the usufruct. C. C. art. 559. But this requirement does not apply where the usufruct has been reserved by a seller. C. C. art. 560. However, if the usufructuary abuse or waste the property subject to the usufruct, the owner has the right to bring his appropriate action for relief. C. C. art. 621. The usufructuary also has the right to offset any damages which he may cause by the improvements which he was authorized by law to make. C. C. art. 595.

In any event this is not an action in which any rights as between the owner and usufructuary may be determined. It was brought as owner against an alleged trespasser, and whatever rights the owner may have must be reversed and relegated to another suit. Then, again, the usufruct was imposed upon an undivided one half of the property only, and Mrs. Strickland's claim for an accounting for the other half of the fruits and revenues or for the rental value of one-half of the property must also be reserved.

As to the claim of $100 for money loaned, plaintiff is entitled to recover.

As pointed out by the lower court, we do not think that either Mrs. Strickland or her husband, Learcus Strickland, is in a position to say that the property was not her separate estate. The husband authorized her to purchase the plantation as her separate property, and signed several acts in which he

recognized it as such, and authorized and permitted her to deal with Winn in regard to the property as her own, and the estoppel pleaded was properly maintained. Maguire v. Maguire, 40 La. 579, 4 South. 492; Fireman's Ins. Co. v. Hava, 140 La. 638, 73 South. 708. See La. Dig. vol. 4, p. 918, § 98, verbo "Marriage."

For the reasons assigned, the judgments appealed from are annulled and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of Hezekiah Winn and against Mrs. Dorothy Strickland and her husband, Learcus Strickland, recognizing and sustaining his usufruct or life estate in an undivided one-half of the Oaks plantation, particularly described in the act of May 31, 1912, filed and of record in Conveyance Book No. C, on page 557, of the Records of Jefferson Davis Parish, and further recognizing and sustaining the right of said Winn to have the said undivided one-half interest revert to him in full ownership in event of the death of the said Mrs. Strickland before that of Winn, in reconvention, and that Mrs. Dorothy Strickland and husband recover of the said Winn judgment in the sum of $100, with legal interest from July 1, 1913, until paid, reserving to Mrs. Strickland her appropriate action for any waste or abuse of the property subject to the usufruct, and for an accounting for the undivided one-half of the fruits and revenues or for the rental value of one-half of the property of the plantation, and that she pay all costs.

O'NIELL, J., dissents, being of opinion that both judgments should be affirmed.

On Rehearing.

BY the WHOLE COURT.

ST. PAUL, J. The case of Winn v. Strickland was heretofore appealed under the number 22011 of our docket (147 La. 115, 84 South. 515), and was then remanded upon certain issues which have since passed out.

The relevant facts are substantially these:

Plaintiff and defendant owned a certain plantation in common. Plaintiff owed defendant $2,000, and defendant had also joined plaintiff in mortgaging the whole plantation for a debt of $3,000 due by plaintiff alone to one Mrs. Miller.

For reasons satisfactory to themselves, plaintiff executed a deed of sale to defendant of his one-half, for the nominal consideration of $5,000, which they declared to be less than the value thereof, and on that account plaintiff reserved a usufruct or life estate in the one-half so transferred.

Defendant declares that the nominal consideration of $5,000 represented the $2,000 due her by plaintiff and the $3,000 Miller mortgage with which her half of the property was also burdened, and that the deed was executed in order to secure her as to these. She admits (in her testimony) that the deed was not to be recorded for the time being, and (in her answer) that there was an understanding that plaintiff might take back his deed and his property on paying her the $2,000 and taking up the Miller mortgage.

But plaintiff afterwards disappeared and was thought dead; and so defendant, to secure herself, recorded her deed. Shortly afterwards plaintiff reappeared.

Up to this time the parties had been friendly. But now they fell out; and plaintiff then brought suit to have the deed declared simulated and obtained by fraud. The nature of the alleged fraud is not set up fully in the pleadings, but from the evidence it appears that two deeds were executed which were supposed to be duplicates, though not so in fact; for the deed delivered to defendant and recorded by her contained only a reservation of usufruct as aforesaid, whilst the supposed duplicate which he retained reserved, in addition thereto, a reversionary interest in the property in case

defendant died before plaintiff; said reservation being written by defendant in her own hand and signed by her.

In the original petition plaintiff prayed to have the deed declared a simulation (and for certain moneys and damages, etc., all now abandoned). And by supplemental petition plaintiff prayed in the alternative for recognition of his life estate in the property; but never at any time did plaintiff pray for recognition of a reversionary interest in the property or even make mention thereof in his pleadings until the case was remanded, and as hereinafter mentioned. The judgment first rendered below, and appealed from under No. 22011 aforesaid, did, however, award it to him; but this was ultra petitionem, and perhaps crept into the signed judgment by some oversight; for the minute entry of that judgment makes no mention of it.

Meanwhile Mrs. Miller had foreclosed on her mortgage, and defendant had bought in the property at that foreclosure. This raised the question whether under her own statement defendant had assumed the Miller mortgage, because, if so, then she could not, by permitting the foreclosure, shut out plaintiff's life interest in the undivided half. Manifestly, however, if the deed was a mere simulation, as plaintiff contended, the consequence would be the reverse; for in that case the deed would cease to be, and defendant's title under the foreclosure would be complete.

[5, 6] Accordingly when the case was remanded plaintiff discontinued his demand for the annulment of the deed, and all other demands except "for the recognition of the life estate or usufruct and the reversionary clause," which last (as we have said) was never at any time prayed for, and must therefore be considered as having already been abandoned. The admission in evidence of the deed containing the clause aforesaid did not have the effect of enlarging the pleadings, as it was otherwise admissible, to wit, to show the alleged simulation and fraud. The reoffer thereof on the second trial was a mere formality, and the failure of defendant to repeat the formal objections already made cannot be construed as a consent to enlarge the pleadings. Her final and general objection to all of plaintiff's testimony was clearly meant to cover all documents about which he was interrogated, which were objected to at the time.

[2] Moreover, throughout this whole proceeding plaintiff relies strongly upon the pleadings, testimony, writings, and acts of the defendant as an estoppel on which to uphold his claim. As these all had reference only to the deed which defendant held and recorded, plaintiff cannot extend them to include another deed which she has never at any time acknowledged as constituting the agreement between them.

"In no event can an estoppel be extended beyond the natural and reasonable import of the acts or conduct relied on to create it." 21 C. J. 1206.

[1] The case therefore stands squarely upon the answer of the defendant, and raises the one question:

"Did the deed accepted and recorded by defendant bind her to discharge the Miller mortgage?"

And we think it did. For it is clear that the deed was given in order to secure defendant against the Miller mortgage, whilst at the same time preserving plaintiff's life interest in his one-half; and there was but one way in which it could possibly avail for both purposes, to wit, by paying the Miller mortgage. In plain words, if it was not the common intent that the defendant should pay the Miller mortgage, then the transaction between herself and plaintiff was perfectly vain and idle.

Or, to put it another way: For $5,000, of which $2,000 was paid plaintiff and $3,000 would be paid to the mortgagee, defendant might have plaintiff's half interest in the plantation subject to plaintiff's life estate; but, if allowed to ignore the deed, she gets the half interest unburdened by the usufruct for exactly the same price. This she cannot do. For, by her own admission, the amount of the mortgage formed part of the consideration mentioned in the deed; and certainly she cannot pretend that she might be entitled to the land under the deed without paying the mortgage. So that, whether originally assumed by her or not, yet when she elected, by recording the deed, to claim the land as her own under the deed, she then bound herself absolutely towards plaintiff for the payment of the mortgage.

"Where one has an election either to ratify or disaffirm a conveyance, he can either claim under it or against it, but he cannot do both; and, having adopted one course, he cannot afterwards pursue the other." 21 C. J. 1210, 1211.

The case of Strickland v. Winn was tried and decided by the trial judge on the theory, which accorded with his judgment in the case of Winn v. Strickland, to wit, that Mrs. Strickland had not assumed the "Miller mortgage" mentioned in that case.

Our reversal of that judgment and holding that Mrs. Strickland had assumed ·the payment of that mortgage now eliminates from the issues of this case her claim to be reimbursed the value of her one-half interest in the Oaks plantation sold for the payment of his alleged debt; and we need mention that no further.

At the outset it may be well to say that defendant (Winn) was in exclusive possession of the aforesaid plantation up to about the end of the year 1915, and that plaintiff (Mrs. Strickland) has been in exclusive possession thereof since about ·the beginning of the year 1916.

This suit was filed in February, 1916. It is for the ownership and possession of some 33 different articles, alleged to have been attached to the realty as part thereof and to have been· carried away by defendant when he removed from the premises, or in the alternative for their value.

Plaintiff also claims three horses and two blankets as her personal property, also carried away at the same time; also one-half the value of three iron beds and of one threshing machine or separator, belonging to the parties in common, and sold by defendant. She further claims the value of certain trees destroyed by defendant, and $100 for borrowed money.

She asks an accounting for her share of the net proceeds of the crops for the years 1911 and 1912, during which they farmed the place together; also one-half the rental value of the plantation for the years 1913 and 1914, and the whole rental value for the year 1915. She also asks for an injunction restraining defendant from interferring with her exclusive right to the premises, and for a sequestration of the articles removed if found.

[3] The defense is substantially the general issue, enlarged in ·brief and argument to the effect that, being usufructuary for one-half, he cannot be held to an accounting for waste until the expiration of the usufruct. This, of course, cannot possibly apply to those articles not attached to the realty. Even as to these, however, the plea is highly technical and not well founded. The usufructuary who commits waste on the estate may be expelled with or without compensation according to circumstances; and, if he wishes to prevent the re-entry of the owner, he must repair the waste without delay. C. C. arts. 621, 622.

In effect, that is all the owner is now asking defendant to do, viz. pay the cost of repairing the damages done by him to the estate. Moreover, as defendant will doubtless claim the value of his usufructuary rights

(say, half the rental value of the premises) for the time during which he has been kept out of possession, and plaintiff will doubtless urge her claims as a set-off thereto, we think the ends of justice will be best subserved by deciding at this time what those claims are. "Interest rei publicæ ut sit finis litium."

The sheriff located and seized the following objects, which were duly appraised and released to defendant on bond, to wit: Mare Eureka, $140; two iron cisterns, $30; one bathtub and one heater, $40; one closet, $7.50; galvanized gutters, $12; one culvert, $5; two blankets, 50 cents—total, $235. All of which the trial judge found to be the property of plaintiff.

The sheriff also seized the mare Lena, $90, likewise bonded by defendant. The trial judge found that this animal belonged to plaintiff, and that she died whilst thus in defendant's possession, but through no fault of his; but whether defendant be none the less liable for her value he did not decide, nor do we, as that issue is not presently involved. Some bundles of wire and one machine shed were also seized, but could not be identified.

[4] The trial judge saw and heard all the witnesses; and no manifest error has been pointed out in any of his findings of facts. We therefore adopt them.

He rejected plaintiff's claims as to the iron beds and as to 16 other articles, for reasons assigned, which appear to us satisfactory. He allowed for 11 other articles practically the value claimed by plaintiff, to wit, $364. He allowed $140 for the mare Gyp, sold by defendant; $50 for trees destroyed; $35 for the cost of replacing the bathtub and heater; $75 for the half interest in the separator; $25.05 as plaintiff's share in the crop of 1914; and $100 for money loaned—the total of which is $789.05. He fixed the rental value of the plantation for 1915 at $300, of which plaintiff is entitled to one-half, say, $150.

He rejected the claim for the proceeds of crops of 1911 and 1912 as being prescribed, even if anything were due, as to which he found no proof. He rejected the claims for rent for the year 1913, on the ground that defendant was to have only a share in the crop, which was a failure.

He maintained the writ of sequestration as to the mare Lena, and the other articles which he found belonged to plaintiff. He also maintained the injunction (in part); but that must now be dissolved.

### Decree.

The judgment appealed from in Winn v. Strickland is therefore reversed, and it is now ordered that there be judgment in favor of plaintiff Hezekiah Winn and against defendant Mrs. Dorothy Strickland, recognizing said plaintiff as entitled to a life estate or usufruct in and on an undivided one-half interest in the following real property situated in the parish of Jefferson Davis, to wit: The Oaks plantation—which is more particularly described in an act passed between the parties hereto dated May 31, 1912, and recorded in Conveyance Book A, page 332 et seq., of the Records of said Parish of Jefferson Davis, on March 14, 1913.

And the judgment appealed from in Strickland v. Winn, is therefore amended so as to read as follows, to wit: That plaintiff Mrs. Dorothy Strickland do have judgment against defendant Hezekiah Winn for the full sum of $939.05, with legal interest from February 20, 1916, until paid; that she be recognized as the owner of the following articles seized by the sheriff, to wit: The mare Lena; the mare Eureka; two iron cisterns; one bathtub and one heater, with pipes and fittings; certain galvanized gutters; one closet; two blankets—as to all of which the writ of sequestration is maintained, but is otherwise dissolved. It is further ordered that the writ of injunction

herein issued be dissolved. And as thus amended said judgment is affirmed.

It is further ordered that the costs of appeal in both cases and the costs of the lower court in Winn v. Strickland be borne by Mrs. Dorothy Strickland, and that the costs of the lower court in Strickland v. Winn be paid by Hezekiah Winn.

OVERTON, J., recused.

PROVOSTY, O. J., and LAND, J., dissent.

LECHE and THOMPSON, JJ., take no part.