121 So.2d 831

J. A. HODGES et al.

v.

LONG–BELL PETROLEUM COMPANY, Inc., et al.

No. 44528.

Dec. 14, 1959.

On Rehearing June 29, 1960.

Erwin & Lee, Plauche & Plauche, S. W. Plauche, Jr., Lake Charles, for plaintiffs and appellants.

W. E. Slagle, Kansas City, Mo., Le-Compte, Hall & Coltharp, De Ridder, Anderson, Swift, Hall, Raggio & Farrar, Lake Charles, Madison, Madison, Files & Shell, Monroe, Joiner E. Cartwright, Donald F. Robillard, for defendants and appellees.

Liskow & Lewis, New Orleans, amicus curiae.

HAWTHORNE, Justice.

J. A. Hodges as owner of the SW¼ of NE¼ of Section 9, Township 6 South, Range 9 West, Beauregard Parish, Louisiana, joined by his mineral lessees and certain royalty owners who derive their royalty interests under the lease, brought this suit for a declaratory judgment [1] decreeing Hodges to be the owner of all the minerals in the land, subject to the leasehold right of his lessees and the mineral royalty interests of the other plaintiffs. Named as defendants are Long-Bell Petroleum Company, Inc., and its mineral lessee, Sun Oil Company. After trial on the merits there was judgment rejecting plaintiffs' demands and dismissing their suit, and decreeing Long-Bell Petroleum Company to be the owner of all the oil, gas, and other minerals in, on, and under the property, subject to its lease to Sun Oil Company. From this judgment plaintiffs have appealed.

The facts pertinent to the decision of this case are not in dispute. On December 29, 1931, Long-Bell Lumber Sales Corporation as fee owner conveyed to Long-Bell Minerals Corporation all the oil, gas, and other minerals under a tract of land in Beauregard Parish containing more than 100,000 acres. In 1936 Long-Bell Minerals Corporation was merged with Long-Bell Petroleum Company, Inc., defendant in the instant suit. By the 1931 conveyance there came into existence a mineral servitude affecting the entire tract described, in which was included the 40-acre tract now owned by plaintiff Hodges. We shall hereafter refer to this servitude as the "1931 servitude". On February 28, 1938, Long-Bell Petroleum Company, Inc., owner of the 1931 servitude, and Long-Bell Farm Land Corporation, which had acquired the land of Lumber Sales Corporation, sold to plaintiff J. A. Hodges by warranty deed the 40-acre tract described above, and

[1.] Defendants filed exceptions of no cause and no right of action challenging the right of plaintiffs to institute this suit under the Declaratory Judgments Act. These exceptions were overruled by the trial judge, and on this appeal defendants have abandoned these exceptions.

Hodges went into possession of the property. There was no drilling or production on the Hodges tract by defendants or their authors in title. In 1939 the California Company as mineral lessee of the Petroleum Company, the Farm Land Corporation, and the Lumber Company drilled two wells on lands embraced within the 1931 servitude and contiguous to the 40 acres acquired by Hodges. No production resulted, but these wells were drilled in good faith and to a depth at which there was a reasonable hope of discovering minerals in commercial quantities. In 1946 the Petroleum Company leased to Barnsdall Oil Company lands likewise embraced in the 1931 servitude, and under this lease Barnsdall drilled on lands contiguous to the Hodges tract two wells which were completed as producers in December, 1946, and February, 1947. The land of the plaintiff was not covered by either of these leases.

The deed to plaintiff J. A. Hodges dated February 28, 1938, in which Long-Bell Petroleum Company, Inc., and Long-Bell Farm Land Corporation are designated as vendors, reads as follows:

"Know All Men By These Presents, That the Long-Bell Farm Land Corporation, organized under the laws of the State of Missouri, and The Long-Bell Petroleum Company, Inc., organized under the laws of the State of Louisiana, hereinafter called the vendors, for the consideration hereinafter recited, and on the terms and conditions hereinafter expressed by these presents, do hereby Grant, Bargain, Sell, Convey, Assign, Set Over and Deliver to J. A. Hodges, (husband of Irene Sellers) of Ragley, Louisiana, hereinafter called the vendee, the following described property situated in the Parish of Beauregard, State of Louisiana, to-wit:

"The Southwest quarter of Northeast quarter (SW¼ NE¼) of Section Nine (9), Township Six (6) South, Range Nine (9) West, containing 40 acres, more or less.

"This conveyance is made expressly subject to existing public roads over any part of the above described premises.

"There is hereby expressly reserved unto the Long-Bell Farm Land Corporation, its successors and assigns, all of the timber now standing upon the above described land with the right to remove same at any time within one (1) year from February 23, 1948, together with all rights of ingress and all other rights necessary or convenient for the removal of said timber.

"There is hereby expressly reserved unto The Long-Bell Petroleum Company, Inc., its successors and assigns, all of the oil, gas and minerals beneath the surface of the land above

described, with full and exclusive right and authority to exercise all reasonably necessary means for the prospecting, exploring and developing of such oil, gas and other minerals, including such right of access to the use of the surface of said lands as may be necessary or incidental to this reservation; provided, however, that the vendee, or his heirs or assigns shall not be required to remove any buildings or other improvements placed or made upon said lands, and provided further that in the exercise of said reservation reasonable compensation shall be made for damages caused to said lands and improvements and growing crops thereon, and reasonable rentals shall be paid for such of said lands, if any, as may be used exclusively for such purposes.

\* \* \* \* \* \*

"To Have And To Hold the said property and appurtenances subject to the reservations, exceptions and conditions aforesaid, unto the said vendee, his heirs and assigns, forever; and the said Long-Bell Farm Land Corporation hereby binds itself, its successors and assigns to Warrant and Forever Defend the property and appurtenances herein conveyed against all legal claims and demands whatsoever, except those herein expressly reserved and excepted, as to taxes not now due and unpayable.

"The said vendors moreover transfer unto the said vendee all the rights and actions of warranty to which they are or may be entitled against all former owners of the property herein conveyed, hereby subrogating the said vendee to the said rights and actions to be by him enjoyed and exercised in the same manner as they might have been by the vendors.

"This conveyance is made for and in consideration of the sum of One Hundred Twenty and No/100 Dollars ($120.00) cash paid, the receipt of which is hereby acknowledged.

"In Testimony Whereof, the Long-Bell Farm Land Corporation and The Long-Bell Petroleum Company, Inc., have caused this instrument to be executed by their proper officers and their corporate seals to be hereunto affixed, respectively, on this the 28th day of February A.D. 1938.

```
 "Long-Bell Farm Land
 Corporation
"Attest: "By: R. T. Demsey,
"W. A. Barker Vice-President
"Assistant Secretary
"(seal)
"Witnesses: L. L. Swafford
 "Geo. W. Winship
 "The Long-Bell Petroleum
 Company, Inc.
"Attest: "By: R. T. Demsey,
"W. A. Barker Vice-President
"Assistant Secretary
"Witnesses: L. L. Swafford
 "Geo. Winship"
```

More than 10 years after the date of the execution of this instrument the vendee, J. A. Hodges, plaintiff, wrote to the Petroleum Company requesting a release of the mineral rights affecting the land described in the deed. In reply the Petroleum Company informed plaintiff that it was still the owner of the mineral rights by virtue of the 1931 servitude, and that this servitude was still in full force and effect because of the good faith drilling of the wells in 1939 and the drilling and production of oil in 1946 on lands contiguous to that of Hodges.[2] Hodges then filed this suit.

In his petition plaintiff specifically pleads estoppel, alleging that the defendant Petroleum Company as well as the Long-Bell Farm Land Corporation is estopped by the warranty and other provisions in the deed from claiming under the 1931 servitude any mineral rights in the land sold to him. In the alternative, in the event the court should overrule the plea of estoppel, plaintiff contends that by the execution of the 1938 deed by the landowner and the mineral owner there resulted a division or reduction of the 1931 servitude so that any subsequent drilling operations which were not conducted on the 40 acres described in the deed did not interrupt the liberative prescription accru-

ing in favor of his tract. Still further in the alternative plaintiff contends that by the execution of the leases to the California Company in 1939 by the landowner and the mineral owner as lessors, which did not include this tract, there likewise resulted a division or reduction of the 1931 servitude so that drilling operations of the lessee did not constitute an interruption of the liberative prescription as to the Hodges tract.

On the other hand, the defendants contend that the Petroleum Company is the owner of the mineral rights under the land involved by virtue of the 1931 servitude which is still in existence because the drilling operations and production on contiguous lands were an exercise of this mineral servitude.

The reservation of the minerals contained in the deed to Hodges and the other provisions of the deed are similar if not identical to those in deeds considered by this court in several other cases involving Long-Bell Petroleum Company,[3] but the legal issue of estoppel by deed raised in the instant case was not presented to or decided by this court in those other cases.

In the Hodges deed one of the vendors, Long-Bell Farm Land Corporation, expressly warranted title to the property and

2. In these proceedings defendants assert no claim to the mineral rights under the mineral reservation in the 1938 deed to Hodges.

3. Long-Bell Petroleum Co. v. Tritico, 216 La. 426, 43 So.2d 782; Long-Bell Lumber

Co. v. Granger, 222 La. 670, 63 So.2d 420; Jantz v. Long-Bell Petroleum Co., 229 La. 821, 86 So.2d 918; Hinchee v. Long-Bell Petroleum Co., 235 La. 185, 103 So.2d 84.

bound itself under this warranty to defend the property against all claims or demands except those therein expressly reserved or excepted. Moreover, both the Farm Land Corporation and the Petroleum Company in this deed transferred to Hodges all rights and actions of warranty.

Article 1764 of the Civil Code provides:

"All things that are not forbidden by law, may legally become the subject of, or the motive for contracts; but different agreements are governed by different rules, adapted to the nature of each contract, to distinguish which it is necessary in every contract to consider:

\* \* \* \* \* \*

"2. Things which, although not essential to the contract, yet are implied from the nature of such agreement, if no stipulation be made respecting them, but which the parties may expressly modify or renounce, without destroying the contract or changing its description; *of this nature is warranty,* which is implied in every sale, but which may be modified or renounced, without changing the character of the contract or destroying its effect. \* \* \*" (Italics ours.)

Article 2501 reads:

"Although at the time of the sale no stipulations have been made respecting the warranty, the seller is obliged, of

course, to warrant the buyer against the eviction suffered by him from the totality or part of the thing sold, and *against the charges claimed on such thing, which were not declared at the time of the sale."* (Italics ours.)

Thus even if we concede that there was no express warranty by the Petroleum Company, its obligation of warranty existed under the provisions of these two articles of the Code.

As correctly stated by counsel for appellants in brief, " \* \* \* although there were two vendors in the 1938 deed, the obligation of warranty is indivisible, and where more than one vendor joins in a deed each, and every vendor is bound as warrantor of the entire title. Schultz v. Ryan, 131 La. 78, 59 So. 21; Soule v. West, 185 La. 655, 170 So. 26, and Robinson v. Dunson [La.App.], 65 So.2d 643".

At the time of the sale to Hodges in 1938, the 1931 servitude was in existence, but no mention of this servitude was made in the deed. However, the landowner and the owner of the servitude, the Petrolum Company, were named as vendors in the deed, and under the express provisions of Article 2501 they, and each of them, warranted Hodges against any charges that might be claimed against the land sold which were not declared at the time of the sale. The next question for our decision is whether the 1931 servitude was a charge against the land sold to Hodges.

As previously stated, the 1931 servitude came into existence by the sale of the mineral rights by Long-Bell Lumber Sales Company to Long-Bell Minerals Corporation in 1931. Under the law of this state oil and gas in place are not subject to absolute ownership as specific things apart from the soil of which they form a part; or, as has been stated, there can be no mineral estate in oil and gas as such. Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207; Long-Bell Petroleum Co. v. Tritico, 216 La. 426, 43 So.2d 782, and authorities there cited. A sale or reservation of minerals is a sale or reservation of a real right or a servitude, and carries with it the grant or retention of the right to go on the land for exploration for or exploitation of the minerals. Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846; Deas v. Lane, 202 La. 933, 13 So.2d 270; Long-Bell Petroleum Co. v. Tritico, supra; Continental Oil Co. v. Landry, 215 La. 518, 41 So.2d 73. Moreover, a mineral servitude is a real right or charge imposed on the land. Patton v. Frost Lumber Industries, 176 La. 916, 147 So. 33. See La. Civ.Code Art. 647.

When Hodges acquired the property in 1938, the land was burdened with a charge, the 1931 mineral servitude. This mineral servitude was owned by one of the vendors named in the deed, the Petroleum Company, which in this suit is asserting rights under this servitude although no mention of it was made in the deed.

The only conclusion we can reach is that by the 1938 deed to Hodges, Hodges was warranted by the Petroleum Company against the 1931 servitude, a preexisting charge, and that consequently the Petroleum Company, named as a vendor in that deed, is estopped to assert as against Hodges any claim or rights under that servitude.

Counsel for the appellees argue that the plea of estoppel is not well founded in this case for several reasons. One of their contentions is that Hodges did not acquire the minerals by the 1938 deed, and that consequently there was no warranty of title to these minerals since under the provisions of Article 2501 of the Code the seller warrants title only with respect to eviction and charges against the thing sold, and that there can be no estoppel in the absence of warranty. Counsel are entirely correct when they state that the mineral rights were not conveyed to Hodges in the 1938 deed. However, the land was, and, as pointed out above, the vendors warranted him against any preexisting charge against the land, and the 1931 servitude was such a charge.

Further in support of their argument that the plea of estoppel is not well founded, appellees rely on Long-Bell Petroleum Co. v. Tritico, 216 La. 426, 43 So.2d 782. In that

case the court was considering deeds executed in November, 1941, similar to the deed here involved, which contained a mineral reservation in language identical to that of the reservation in the Hodges deed, and in which the Petroleum Company and the Farm Land Corporation were named as vendors. Appellees say that the court held in the Tritico case that there was no warranty of title to the mineral rights because they were not conveyed, and that the Petroleum Company did not appear in the deeds as vendor. Although there is language in that case that apparently supports appellees' view, we cannot agree that the holding of the court was what they say it was.

In the Tritico case the Petroleum Company was claiming that the mineral reservation in the deeds of November, 1941, created a new servitude. The holding of this court in that case was that this mineral reservation to the Petroleum Company was legally ineffective and did not create a new servitude (1) because the landowner, Farm Land Corporation, was not the owner of the minerals when the deeds were executed —the mineral rights had been conveyed to the Petroleum Company in December, 1931, and this 1931 servitude was still in full force and effect since 10 years had not elapsed from the date of the 1931 deed—and (2) because the Petroleum Company did not clearly express its intention to renounce the 1931 servitude. What the court was called upon to decide in the Tritico case was whether the mineral reservation in the 1941 deeds created a new servitude, and that is the question it did decide.

It is true that in that case the court stated that the title to the mineral rights was never conveyed by the 1941 deeds to the vendees, and this statement is correct. In the instant case likewise we concede, as stated above, that the mineral rights were not conveyed to the vendee; but this is immaterial to our decision of the instant case because the warranty which is the basis of estoppel is the warranty of title to the land, and not of title to the mineral rights.

It is interesting to note that in the case of Long-Bell Lumber Co. v. Granger, 222 La. 670, 63 So.2d 420, the court again had occasion to consider a mineral reservation identical to that in the deed involved in this case and also to that in the deeds in the Tritico case, the reservation there being in 1943 deeds in which the Farm Land Corporation and the Petroleum Company joined in the execution of warranty deeds to the defendants' authors in title. In the Granger case the mineral reservation in favor of the Petroleum Company was found to be legally effective because at that time (1943) the vendor, Farm Land Corporation, was the owner of the minerals, more than 10 years having expired since the creation of a 1931 servitude.[4] In other words, in the

4. This 1931 servitude expired from non-use in 1941.

Tritico case the Petroleum Company's contention that a new servitude was created in the 1941 deeds was rejected, whereas in the Granger case the same contention was upheld for the reason given above. There can be no doubt, however, that in all of these deeds it was the intention of the vendors to create a new servitude.

■ In the deed in the instant case both the Petroleum Company and the Farm Land Corporation are specifically named as vendors, and they executed the deed as such. They solemnly stated in the instrument that they were vendors and as such conveyed the land to Hodges. Certainly as between them and Hodges they can be considered in no other light than as vendors of the land. In Gaines v. Crichton, 187 La. 345, 174 So. 666, 667, this court said:

"Estoppel by warranty is an estoppel based on the principle of giving effect to the manifest intention of the grantor, and of preventing the grantor from derogating or destroying his own grant by any subsequent act. It is a species of estoppel by deed. The party to the deed and his privies are estopped from den. ing the truth of any material fact asserted in the deed. Lewis v. King, 157 La. 718, 103 So. 19.

"Where a party solemnly admits a fact by deed, he is estopped from not only disputing the deed itself, but also every fact which the deed recites. Karcher v. Karcher, 138 La. 288, 70 So. 228; Reliance Homestead Ass'n v. Brink, 173 La. 331, 137 So. 52."

In the deed in the instant case both the Farm Land Corporation and the Petroleum Company stated as a fact that they were vendors of the land, and they are now estopped from disputing this fact.

For the reasons assigned the judgment appealed from is annulled, reversed, and set aside. It is now ordered that plaintiffs' plea of estoppel be sustained, and that the defendant Long-Bell Petroleum Company, Inc., and its mineral lessee, defendant Sun Oil Company, be estopped from claiming under the 1931 servitude any mineral rights in, on, and under the property described in plaintiffs' petition. Defendants-appellees are to pay all costs.

On Rehearing

McCALEB, Justice.

The facts of this case have been detailed in our original opinion. In short, J. A. Hodges, the owner of a 40-acre tract in Beauregard Parish, along with his mineral lessee and certain royalty owners under the lease, are contesting the ownership of minerals in the tract with Long-Bell Petroleum Company, Inc. and its mineral lessee, Sun Oil Company. Long-Bell Petroleum Company, by merger with Long-Bell Minerals Corporation in 1936, acquired a mineral servitude covering a vast tract of land, in which was included the 40-acre

tract now owned by plaintiff, Hodges. Prescription on the large mineral servitude had begun to run in 1931, but it was interrupted in 1939 by good faith dry hole drilling and, in 1946 and 1947, by production which has continued ever since. However, no well has ever been drilled on Hodges' 40 acres by defendants or their predecessors. Hodges acquired his 40-acre tract in 1938 by a deed in which the Long-Bell Farm Land Corporation, the then owner of the land, and the Long-Bell Petroleum Company, Inc., the then owner of the mineral servitude on the large tract which included Hodges' land, were designated as vendors. Also included as a part of the deed was the following paragraph:

"There is hereby expressly reserved unto The Long-Bell Petroleum Company, Inc., its successors and assigns, all of the oil, gas, and minerals beneath the surface of the land above described, with full and exclusive right and authority to exercise all reasonably necessary means for the prospecting, exploring and developing of such oil, gas and other minerals, including such right of access to the use of the surface of said lands as may be necessary or incidental to this reservation; provided, however, that the vendee, or his heirs or assigns shall not be required to remove any buildings or other improvements placed or made upon said lands, and provided further that in the exercise of said reservation reasonable compensation shall be made for damages caused to said lands and improvements and growing crops thereon, and reasonable rentals shall be paid for such of said lands, if any, as may be used exclusively for such purposes."

In our original opinion, we held that Long-Bell Farm Land Corporation and Long-Bell Petroleum Company were estopped by their deed from claiming under the 1931 servitude any mineral rights in the land which they sold to Hodges in 1938. This was based on a finding that the Farm Land Corporation expressly warranted title to the property without expressly excepting from that warranty the charge on the land which was the 1931 servitude, and that Petroleum Company was bound to the same degree under the implied warranty imposed on all vendors by Articles 1764 and 2501 of the Civil Code. We also found that the Petroleum Company was estopped to deny that it was Hodges' vendor, since it had appeared as such in the deed, and that its reservation of minerals in the deed was not equivalent to a declaration that the 1931 servitude existed as a charge on the property sold.

Defendants' main contention on rehearing is that there was no warranty by Petroleum Company estopping it from claiming its ownership of the mineral rights or from exercising them. Defendants

claim that the warranty in the deed was so limited that it excluded *any* warranty of the minerals, and that there was no implied warranty as to the minerals because the land less the minerals, and not the fee title, was sold.

 Defendants are correct in the contention that there was no warranty of the minerals. The minerals were reserved to Petroleum Company and the land was sold subject to the mineral reservation. However, it is not accurate to simply say that Hodges purchased the land less the minerals.[1] To be more exact, it should be said that, as between Hodges and his vendors, Hodges purchased the land subject to whatever charges were declared against it in the deed. The mineral reservation was a charge against the land but, under the doctrine of estoppel by warranty, Petroleum Company can assert that charge only to the extent that it was declared. Hence, we must determine the extent of the declaration.

 There is a difference between the sale of a tract of land with a reservation of the minerals and the sale of land subject to existing mineral rights in it. The former is accomplished with language of reservation and indicates that something new is being created. A vendee under such mineral reservation is led to believe that the servitude created by it will prescribe at the end of ten years unless there is mineral development within that time *on the land sold*. On the other hand, the latter form of conveyance, accomplished with language of exception, puts the vendee on notice that there is a pre-existing mineral servitude on the land which may extend beyond the limits of the land purchased, and that prescription on any such servitude may have been interrupted, or may in the future be interrupted, by mineral development on land other than his own. Hence, language of reservation will suffice to declare one type of charge against the land, but language of exception is necessary to declare the other.

In the case at bar, the vendors used the language of reservation rather than the language of exception, in attempting to reserve minerals by the deed in question, and thereby declared to the vendee, Hodges, that they intended to create a new servi-

1. Counsel for defendants appear to be under the impression that it is feasible to create two separate estates—a land estate and a mineral estate—on one tract of land. However, this is not possible in Louisiana. Wemple v. Nabors Oil & Gas Co., 154 La. 483, 97 So. 666. When a landowner in this State sells his land and reserves the mineral rights, he reserves one of the elements of ownership in the form of a servitude, which expires in 10 years if it is not used during that length of time. The extent of this servitude is a matter of contract and can vary extensively from one transaction to the next. Thus, to say that Hodges bought the land less the minerals is a gross oversimplification.

tude.[2] Thus, they are estopped to claim any mineral rights in the property conveyed, if those rights are other than they would have acquired if a new servitude had been created.

It is obvious that Petroleum Company acquired no right to the minerals in the Hodges tract under the reservation which it declared in the deed, because this Court held in Long Bell Petroleum Co. v. Tritico, 216 La. 426, 43 So.2d 782, that the mineral reservation was legally ineffective to create a new servitude. We said in that case that the language of reservation in the deed failed to manifest the intention of Petroleum Company to relinquish its 1931 servitude, which was one of the prerequisites to creating a new servitude under the circumstances. It is also clear from what we have said before that Petroleum Company is estopped to claim any mineral rights in the property if they are based on a charge which is broader than that declared in the deed.

Defendants argue that this conclusion puts them in the position of having lost both sides of the same question, and we must admit that this would be true if the unlimited estoppel applied by us on original hearing is allowed to stand. However, we now feel that our ruling on first hearing, that Petroleum Company was estopped because it did not declare to Hodges the existence of the 1931 servitude, despite the fact that Hodges was informed that his 40-acre land purchase was to be subject to a mineral servitude in favor of Petroleum Company, may have been unwittingly broader than the facts of this case required and a precedent may have been established which we might find difficult of modification in subsequent litigation. Although the alteration of our first opinion which will be set out herein does not change the final outcome of this case, it does show that Petroleum Company retained some rights in the Hodges land under the 1931 servitude.

■ The main reason for setting out this modification is a feeling that our opinion on first hearing failed to take sufficient cognizance of the fact that Hodges con-

---

2. When the tract involved in the instant case was conveyed to Hodges in 1938, it was carved out of a tract owned by the Farm Land Corporation which contained over 30,000 acres. The 1931 servitude owned by Petroleum Company was essentially co-extensive with this vast tract. Thus, production anywhere on Petroleum Company's large servitude would interrupt the prescription that was accruing on the whole servitude, including that portion of it covering the Hodges tract. However, the fact that a servitude (charge) of this nature existed on the land conveyed was never communicated to Hodges because language of reservation, and not of exclusion, was used in the deed. It is obvious that the language of the mineral reservation in the deed indicated no more than an attempt to reserve, at the time of the sale, the minerals under the 40 acres being conveyed.

tracted for the establishment of a mineral servitude on his land. Hodges could no more assert a claim that was contrary to his contract than could Petroleum Company. Thus, it would appear to be in keeping with equity and common justice to say that, at least for the ten years that ensued following Hodges' purchase, he, as vendee, was precluded by his bargain from invoking an estoppel against Petroleum Company in an attempt to prevent it from claiming under any valid servitude in its favor which existed on Hodges' land during that time. This balancing of equities would produce a result consonant with the expressed intent of the parties by giving some effect to the mineral reservation in the deed, while at the same time following the holdings in Tritico that execution of the deed here in question created no new servitude but allowed the 1931 servitude to remain a charge on the land. A like result can be reached by adopting the suggestion of former counsel for the Petroleum Company, who represented that company in the Tritico case and who have favored us with briefs as amici curiae during the pendency of the rehearing.

Amici curiae assert that the original opinion herein nullifies that part of the Tritico decision which recognizes the validity of the 1931 servitude. Nevertheless, they concede that there is much force in our finding that Long-Bell, having failed to disclose to Hodges the existence of the 1931 servitude, should in some measure be held estopped to claim that the 40-acre tract is subject to the servitude at this time. These attorneys are of the view that a limited estoppel might be invoked, i. e., an estoppel which would deny to the Petroleum Company the right of claiming at this time that prescription was interrupted as to Hodges' land by the drilling operations conducted on other lands embraced in the 1931 servitude, but which would not have denied Petroleum Company its mineral rights on Hodges' 40 acres under the 1931 servitude for at least 10 years after the sale to Hodges.

We find no merit in the argument that our first opinion in this case is contrary to the ruling in Tritico. The issue there, as aforesaid, was whether a new servitude had been created and it was held that it had not because of the existence of the 1931 servitude. The issue here is not whether the 1931 servitude is in existence. We readily admitted on first hearing that it is still extant, but our conclusion was that the Petroleum Company was estopped from asserting it as Petroleum had not declared it to be a charge on the land in the sale to Hodges.

However, we do feel, as do amici curiae, that the case at bar merits invocation of only a limited estoppel. Whereas Petroleum Company did not specifically disclose the existence of the 1931 servitude, the

deed of acquisition plainly provided for a reservation of the minerals and Hodges expressly agreed that his land was subjected to a mineral servitude in favor of Petroleum Company. In these circumstances, Hodges is in no position to contend that a mineral servitude, if legally in existence, did not burden his 40-acre tract during the ten year period of time that the law fixes for its life in the absence of usage or acknowledgment. We deduce then that, since Hodges was notified that the minerals were being withheld, he can only claim an estoppel as to those matters which were not disclosed and as to which he did not agree. He, of course, agreed that Petroleum Company was to have the exclusive right to search for minerals on his 40-acre tract over a period of ten years from the date of his purchase. Accordingly, the Petroleum Company was not estopped from making use of its 1931 servitude during all that time because the servitude was in existence and Hodges consented that the mineral rights retained by Petroleum Company could be so exercised.

It matters not, we think, insofar as estoppel is concerned, whether the disclosed rights could have been exercised under a newly created servitude or under one which had been extant prior to the execution of the act of sale.

But it is far different to say that, after the expiration of ten years without user of the 40-acre tract, Petroleum Company is still entitled to claim its mineral rights under the 1931 servitude. Hodges was not informed by the deed that his land was burdened by a servitude covering over 30,000 acres and, hence, he could not have agreed that a mineral reservation affecting his land could be perpetuated by drilling conducted on other property. Since Petroleum Company did not use the minerals under the Hodges tract for ten years, Hodges is no longer prevented by his bargain from invoking the estoppel which we elaborately defined in our original opinion. Thus, the implied warranty of Petroleum Company, as vendor, must operate today to its full extent, and may be invoked by Hodges to estop Petroleum Company from claiming any mineral rights in his 40 acres.[3]

3. Our opinion on rehearing is completely in accord with the case of Gaines v. Crichton, 187 La. 345, 174 So. 666, which is the most closely analogous case to the case at bar that can be found in our jurisprudence. In that case a vendor sold a tract of land and reserved one-half the minerals, without mentioning in the deed that 1/12th of the reserved interest reposed in two minors. The minerals were not used for 10 years after the sale, and the vendee of the property sued for cancellation of the mineral reservation. Since at that time prescription could not run against a mineral servitude if one of the owners of it was a minor, the defendant pleaded the outstanding interests of the two minor children as an interruption of prescription. However, the court held that the vendor was estopped from showing the outstanding interest in the two children because he had sold the property with full "guarantee of title". The vendee in that case

■ Accordingly, we apply a limited estoppel to the case at hand. This type of estoppel, which has special pertinence to the title or right to property, "is coextensive with, and limited by, the scope of the act or conduct relied on as creating it." See 31 C.J.S. Estoppel § 150, page 438 and Winn v. Strickland, 151 La. 235, 91 So. 719.

Defendants have made other arguments which need not be given separate consideration as they are so connected and interwoven with the issues of warranty and estoppel that the disposition of those issues necessarily operates as a rejection of these points.

Defendants' counsel also contend that plaintiffs' plea of estoppel cannot be maintained because plaintiffs have not shown that they have relied to their detriment on the recitals of Petroleum Company in the deed.

■ There is no merit in the argument. It is obvious that a vendee's acceptance of a deed and his concurrent promise to pay for the property constitute a reliance on statements in the deed which is sufficient to form a basis to estop the vendor from claiming against the vendee or his privies anything contradictory to any material fact

could not have disputed the vendor's right to use his servitude during the 10 years following the mineral reservation, nor could he, during that time, have disputed

which he has either stated or failed to declare in the document. In other words, the doctrine serves as a means of keeping a vendor from disputing that he sold what he said he sold or reserved what he said he reserved.

Defendants conclude their argument on rehearing with the contention that, since Petroleum Company's mineral lessee, Sun Oil Company, was not a party to the Hodges deed and purchased its rights after the Tritico decision, it should not be bound through estoppel by deed or estoppel by warranty.

■ No authority is cited in support of this proposition and we find no substance in it. Sun Oil Company has acquired no title to the 1931 servitude; it is merely a mineral lessee and its rights are therefore dependent on the rights of its lessor.

In Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369, we set out in detail the rights and obligations of lessors and lessees as found in the Civil Code, concluding that a mineral lessee acquires no greater right to the thing leased than his lessor had. It was there recognized that Act 205 of 1938 (R.S. 9:1105) granted to a mineral

the interest of the two minors, even though it had not been declared in the deed.

lessee the privilege of availing himself of any procedural remedy that may be available to the owner of the realty in the protection and defense of such rights as the lessor legally conveyed to him, but it was held that the statute did not have the effect of conferring on mineral lessees any substantive rights in the leased property.

After the Arnold decision, the Legislature amended Act 205 of 1938, but this amendment did not have the effect of changing the essence of the mineral lease contract as set out in the Arnold case. Reagan v. Murphy, 235 La. 529, 105 So.2d 210.

The Legislature did, however, alter the status of a mineral lessee somewhat when it passed Act 7 of the Second Extra Session of 1950 which provided, in part (R.S. 9:2722), that mineral lessees would be protected by and entitled to rely on the registry laws of Louisiana. But it does not here appear that Sun Oil Company is basing its claim on the public records doctrine. Therefore it must be relegated to the position of an ordinary lessee who has no greater rights than his lessor.

For the reasons assigned, it is ordered that our original opinion, as modified by the views herein expressed, and our original decree are hereby reinstated as the final judgment of this Court.

HAMITER, J., concurs in the result.