**INVERSIONES DEL ANGEL, S.A., et al., Plaintiffs–Appellants,**

v.

**CALLON PETROLEUM COMPANY, Defendant.**

**Livingston Parish Police Jury, Defendant–Appellee.**

**No. 88–3742.**

United States Court of Appeals, Fifth Circuit.

Sept. 13, 1989.

Cynthia M. Frazier, Richard F. Zimmerman, and Lee C. Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, La., for plaintiffs-appellants.

Robert L. Redfearn, Thomas Hamrick, Jr., Judy Perry Martinez, John C. Herbert, Simon, Peragine, Smith & Redfearn, New Orleans, La., for Callon Petroleum Co.

James E. Kuhn, Denham Springs, La., for Livingston Parish Police Jury.

Before POLITZ, DAVIS, and DUHE, Circuit Judges.

DUHE, Circuit Judge:

The appellants, Inversiones Del Angel, S.A. ("Inversiones") and Roberta E. Simes ("Simes"), appeal from the district court's rejection of their claim of ownership of one-third the minerals under the streets of Audubon Village Subdivision in Livingston Parish, Louisiana. The undisputed facts are:

In 1966 Melba Leroy Harvey, Melba Leroy Harvey, Jr. and Edwina Ford Anderson sold 320 acres of land, a portion of which now comprises Audubon Village Subdivision, to Reed Erikson. In the act of sale Melba Leroy Harvey and Melba Leroy Harvey, Jr. each reserved one-sixth of all minerals on the 320 acre tract. It is the ownership of this one-third mineral interest that is the subject of the dispute in this case.

In 1972 Erikson sold to Gauguin, Inc. that portion of the tract that now encompasses Audubon Village Subdivision. In 1973 Gauguin, Inc. recorded in the Livingston Parish conveyance records a copy of a plat of survey of Audubon Village Subdivision prepared by a registered land surveyor. The district court found that this recording and the plat substantially complied with La.Rev.Stat.Ann. 33:5051 (West 1989) and, consequently, constituted a statutory dedication to the State of Louisiana of the ownership of the streets and alleys shown on the recorded plat of Audubon Village Subdivision. See *Pioneer Production Corp. v. Segrave*, 340 So.2d 270 (La.1970). Inversiones and Simes do not appeal this finding. However, when Gauguin, Inc. effected the statutory dedication in 1973, the 1966 Harvey reservation of one-third the minerals was yet outstanding. Thus, the dedication of the streets did not then carry with it the mineral interest around which the dispute on appeal revolves. In 1976 the Harvey mineral interest prescribed.

In 1980, Gauguin, Inc. transferred the remaining property back to Erikson but reserved the mineral rights. In 1981, Gauguin, Inc. transferred to appellant Roberta E. Simes fifteen percent of its mineral interest in the property. This conveyance purported to include the interest that had been reserved by the Harveys in the 1966 sale to Erikson. In 1982 Gauguin, Inc. transferred to Inversiones Del Angel, S.A. all of its mineral interest in the property comprising Audubon Village Subdivision.

Callon Petroleum Company operated several unit wells on the property until 1985; since that time Amoco Production Company has operated the wells. Callon paid no royalties attributable to the disputed mineral rights, prompting Inversiones to initiate this action against Callon to recover royalties due. Callon deposited the disputed funds in the registry of the court and filed a counterclaim in the nature of an interpleader against Inversiones and impleaded the Parish of Livingston and Roberta E. Simes. All three claim an ownership interest in the mineral rights underlying the streets and alleys of Audubon Village.

The district court held that when the Harvey mineral reservation prescribed by 10 years' non-use in 1976, it reverted to the then owners of the land—Gauguin, Inc., owner of the bulk of the property, and the Livingston Parish Police Jury, owner of the streets and alleys by virtue of the 1973 statutory dedication.

Inversiones and Simes base their appeal from this decision on La.Rev.Stats.Ann. (West 1989) 31:76, 31:149, and 31:150. Article 150 provides:

When land is acquired in the manner prescribed in Article 149, the prescription of nonuse shall continue to run against any then outstanding mineral rights subject to such prescription and shall accrue in favor of the owner from whom the land was acquired. Thereafter, the prescription of nonuse shall not run against such rights except as provided in Article 151.

Article 149, in pertinent part, reads:

When land is acquired from any person by the United States or the state of Louisiana, or any subdivision or agency of either, or any legal entity with expropriation authority by conventional deed, donation, or other contract or by condemnation or expropriation proceedings and by the act of acquisition, order, or judgment, a mineral right otherwise subject to the prescription of nonuse is reserved, the prescription of nonuse shall not run against the right so long as title to the land remains in the government, or any

of its subdivisions or agencies, or any legal entity with expropriation authority.

The district court held that the phrase in Article 150 "acquired in the manner prescribed in Article 149" requires a twofold finding. First, the land must have been acquired by a public body and, second, the act of acquisition must have contained a reservation of the mineral rights. Because the statutory dedication by Gauguin, Inc. contained no language reserving the mineral rights, the district court held Article 150 inapplicable.

Inversiones and Simes contend that La. Rev.Stat.Ann. 31:76 (West 1989) (which was apparently not argued to the district court) renders the district court's interpretation erroneous. Article 76 provides that the "expectancy of a landowner in the extinction of an outstanding mineral servitude cannot be conveyed or reserved directly or indirectly." Consequently, the appellants argue, no reservation of the outstanding Harvey mineral interest could have been made in the statutory dedication because such a reservation would violate the directive of Article 76. Their argument thus is that "acquired in the manner prescribed in Article 149" refers only to the method of acquisition, i.e., "conventional, deed, donation, or other contract or by condemnation or expropriation proceedings" as provided in Article 149.

■ Article 76 indeed reflects a strong public policy against the creation of separate mineral estates distinct from and independent of the full title of the land. See *Hicks v. Clark*, 225 La. 133, 72 So.2d 322 (1954), holding that a reversionary interest is not an effect of commerce which may be sold. Article 76 serves to prevent indefinite separate ownership of mineral and land interests and exists as a general prohibition against the reservation of reversionary interests. Article 150 should be narrowly construed because it is an exception to the general policy [embodied in Article 76] favoring unification of ownership of land and minerals. *American Waste & Pollution Control Co. v. Madison Parish Police Jury*, 488 So.2d 940 (La.1986).

The Legislature designed Articles 149 and 150 to address minor variations of the same general factual scenario—the government's acquisition of private property. Article 149 enunciates the general rule that a landowner must expressly reserve mineral rights when the government acquires his property. Article 150 merely envisions the only alternative possibility, i.e., that mineral interests are outstanding in a third person at the time of the government's acquisition. Given the strong public policy against dealings in reversionary interests expressed in Article 76, Article 150's reference to the manner of acquisition set forth in Article 149 certainly incorporates the requirement in Article 149 that the reservation be express. Such a requirement reinforces the policy of Article 76.

▇▇▇ It has long been the law of Louisiana that reservation of minerals is accomplished with language of reservation, indicating that "something new is being created." *Hodges v. Long–Bell Petroleum Co.*, 240 La. 198, 121 So.2d 831 (1960). Such a reservation must be express and in writing. *Gulf Refining Co. v. Orr*, 207 La. 915, 22 So.2d 269 (1945); *Little v. Haik*, 246 La. 121, 163 So.2d 558 (1964). In sum, because (1) mineral rights are incorporeal immovables that must be evidenced by a writing, (2) Articles 149 and 150 are exceptions to general rules of Louisiana mineral law, and (3) Articles 149 and 150 were enacted at the same time and with reference to one another, we hold that Article 150 requires a written reservation of outstanding mineral interests. The mere acquisition of land by the government does not automatically create imprescriptible mineral rights in favor of the transferor. Absent an express reservation, the outstanding mineral interests revert to the government as owner of the land.

AFFIRMED.