WARREN E. HOOD, Judge Pro Tem.
This is a concursus proceeding initiated by Ultramar Oil and Gas, Ltd., to resolve a dispute concerning the ownership of certain mineral royalty payments which have been deposited into the registry of the court. The dispute is between the legal heirs of the property owner, hereinafter referred to as the Goldberg Heirs, on the one hand, and those parties claiming royalty interests in the land by virtue of various transactions, on the other hand. These parties are the appellants and are hereinafter referred to as the Royalty Vendees.
The Goldberg Heirs are Shirley Bee Savage Fournet and Joelle Alexa Goldberg Rupert, children and sole heirs of Lenore Schlessinger (also known as Lenore Schles-singer Goldberg).
The Royalty Vendees include Vermilion Bay Land Company, David Paul Dykes, Sally Dykes Smith, Rosemary Bulling Dykes, Thomas A. Durham, executor of the estate of C.R. Pope, Ella Ruth Pope, Patricia Shield Ayres and Robert M. Ayres, trustees of the Robert Atley Ayres and Vera Patricia Ayres trusts U/T/A dated December 15, 1964, H.A. deCompiegne, Jr., Gary Wayne Stelzig, Marsha K. Stelzig, Dale Edward Kearney, Sheryl Lynn Kear-ney, J.L. Pritchett, Janet B. Pritchett, Team Bank, N.A. (formerly Southern National Bank of Houston) agent, Maryann Bryan Hoffmann, wife of Briggs A. Hoff-mann, Jr., who is the same person as Maryann B. Sadler, Dickerman C. Sadler, Jr., Christy B. Sadler, A.D. Pyka, Effie Lou Pyka, R.M. Sikes, individually and as trustee under the will of Jeanette S. Sikes, Bayou Energy, Inc., Drei, Inc., F.F. Ainsworth, C.T. Carden, Edna Mae Carden, Darrell M. Fink, Norma J. Fink and Bobbie Barber Chapman.
The parties submitted a stipulation of facts to the trial court. The trial judge awarded the proceeds of the mineral royalty payments to the Goldberg Heirs.
Lenore Schlessinger, mother and ancestor in title of the Goldberg Heirs, owned a tract of land containing 518.30 acres. This tract of land is completely bisected by a canal (referred to by the parties as the canal strip) which physically divides the land into a northern tract and a southern tract. All of the parties have stipulated that the canal strip, at all times pertinent to the litigation, has been owned by third parties.
Between April 25, 1972, and March 7, 1973, Schlessinger and the Goldberg Heirs executed several royalty deeds through which the Royalty Vendees claim their interests. The instruments creating the royalty interests described the 518.30 acres as one tract of land. There was no distinction made therein regarding the canal or the fact that the canal strip was owned by third parties.
Production was obtained within one year of the conveyances from three oil wells situated north of the canal strip. This was well within the ten year prescriptive period. However, no production was obtained south of the canal until Ultramar began its production on May 1, 1989. This production started more than sixteen years after Schlessinger executed the last of the royalty deeds in question.
The Camerina Sand Reservoir C Unit was created by the Office of Conservation Order No. 155-U-4. Unit tract 19 contains a portion of the Schlessinger land located south of the canal. The present royalty dispute concerns payments attributable to this portion of land.
After considering the Mineral Code and the prior jurisprudence, the trial court ruled that two separate royalty interests were created, one north of the canal and the second south of the canal. The trial court found that prescription was interrupted as to the mineral royalties north of the canal. However, there was no production south of the canal which would have interrupted the running of liberative prescription. Therefore, the trial court rendered judgment in favor of the Goldberg Heirs and awarded them the proceeds of the production south of the canal.
*647 The Royalty Vendees appeal alleging two assignments of error. First, the Royalty Vendees claim the trial court erred by its failure to hold that the Goldberg Heirs were estopped from asserting that the tract was divided by the canal strip. Second, the Royalty Vendees assert that the trial court erred in holding that Article 73 of the Mineral Code precluded estoppel. We find no merit in either of appellants’ contentions.
It should be noted at the outset that the Royalty Vendees lost their mineral royalty on the portion of the tract south of the canal by operation of law. As noted by this circuit in Shell Oil Co. v. Pitman, 476 So.2d 1031 (La.App.3d Cir.1985):
“The law in Louisiana is clear that use of any part of a mineral servitude reserves the servitude in its entirety. Lenard v. Shell Oil Company, 211 La. 265, 29 So.2d 844 (1947). It has long been recognized that although a mineral royalty interest is not a servitude, per se, it is a real right in the nature of a servitude and is subject to the same laws of libera-tive prescription, including the rule that use of the part constitutes use of the whole. Vincent v. Bullock, 192 La. 1, 187 So. 35 (1939). Production from one part of a tract burdened by a mineral royalty interrupts prescription as to the entire tract. Exchange Oil & Gas Company v. Foster, 237 So.2d 904 (La.App. 1st Cir.1970), writ den. 256 La. 884, 239 So.2d 541 (1970); Lavergne v. Savoie, 221 So.2d 71 (La.App.1969). A lack of contiguity between tracts of land subject to one royalty interest is sufficient to defeat an interruption of prescription. See Lee v. Giauque, 154 La. 491, 97 So. 669 (1923); Vincent v. Bullock, supra; Continental Oil Co. v. Landry, 215 La. 518, 41 So.2d 73 (1949); and Whitehall Oil Co., Inc. v. Heard, 197 So.2d 672 (La.App.3d Cir.1967), writ den. 250 La. 924, 199 So.2d 923 (1967).”
The parties have stipulated that the 518.30 acre tract which was burdened by the mineral royalty was completely bisected by a canal owned by third parties. Therefore, the tract of land north of the canal and the tract south of the canal were non-eontiguous. Mineral Code Articles 64 and 73; Lee v. Giauque, supra; Calhoun v. Ardis, 174 La. 420, 141 So. 15 (La.1932); Hunter v. Ulrich, 8 So.2d 531 (La.1942); Continental Oil Co. v. Landry, supra; Whitehall v. Heard, supra; Shell Oil v. Pitman, supra. Accordingly, the use on the portion north of the canal was insufficient to interrupt prescription on the portion south of the canal, even though both portions were granted under one deed.
Appellants cite Civil Code Article 2501 and Hodges v. Long-Bell Petroleum Company, 240 La. 198, 121 So.2d 831 (La.1960), for their theory .of estoppel. Appellants contend that the Goldberg Heirs are estopped from relying on their failure of title as to the canal strip to prove that prescription has run on the portion of the property south of the canal. We believe that the Royalty Vendees’ reliance on es-toppel is misplaced.
First of all, Hodges v. Long-Bell Petroleum Co., supra, dealt with a much different situation than what is at issue here. In Hodges, two servitudes were at issue. First, there was a 1931 servitude which covered 100,000 acres. Defendant, Long-Bell Petroleum Co., joined the surface owner as vendor in the sale of forty acres to Hodges. In this sale a second mineral servitude was reserved. The act of sale did not disclose the existence of the 1931 servitude. No drilling took place on the forty acres bought by Hodges until more than ten years had passed. However, Long-Bell claimed that its drilling operations on other portions of the 100,000 acres had preserved the 1931 servitude on the forty acres now owned by Hodges. The court relied on C.C. Art. 2501 to state that the vendor was obligated to warrant the buyer “against the charges claimed on such thing, which were not declared at the time of the sale”.
The case at bar is factually distinguishable from Hodges. In Hodges the vendor was asserting rights under a prior, undisclosed servitude. In the present case, the Goldberg Heirs are not asserting rights under a prior act. The Goldberg Heirs merely assert that liberative prescription *648 has run due to nonuser. This is not a violation of their warranty. As stated in Deas v. Lane, 13 So.2d 270 (La.1943), “[w]e know of no law, and we have not been referred to any, that obligates the seller of an incorporeal right to warrant that the right will not become lost subsequently by prescription. In fact, the vendor is not even precluded by his warranty from seeking to re-acquire by prescription the property he has sold”.
Our conclusion that the Goldberg Heirs are not estopped from asserting that libera-tive prescription has run due to nonuser is also supported by Continental Oil v. Landry, supra. In Continental Oil a single royalty deed was executed. The court determined that the deed covered three distinct, non-contiguous tracts of land. After noting that a royalty interest is the passive right to a share of the minerals if and when they are produced, the court ruled that “[pjroduction from one of the tracts is not production from the other non-contiguous tracts ...”
Even if the Royalty Vendees were put on notice that the existence of the canal divided their royalty interest into two separate interests, they could not have taken any steps to preserve their interests. A royalty interest is passive and would have prescribed regardless of whether the Royalty Vendees were aware of the lack of contiguity or not. Therefore, the Royalty Vendees’ reliance on estoppel is without merit.
Appellants’ second assignment of error is that the trial court erred by ruling that Mineral Code Art. 73 precluded the Royalty Vendees from relying on estoppel. We are mindful, as was the trial court, that there exists in Louisiana a strong public policy that mineral rights run with the ownership of the land. Use of a mineral right will interrupt the running of prescription. Where, as in a case like this, the land is divided into two non-contiguous tracts of land, both the Mineral Code and the prior jurisprudence unequivocally state that two separate interests are created.
In this case prescription on the tract north of the canal was interrupted by continued use. The interest south of the canal was not used for over sixteen years. Therefore, prescription had run as to that interest south of the canal, as a matter of law. Appellants’ theory of estoppel does not alter this result.
The Royalty Vendees have referred the court to three cases in which they contend liberative prescription has been allowed to exceed 10 years. Whitehall, supra; Ober v. Williams, 213 La. 568, 35 So.2d 219 (1948); Chicago Mill and Lumber Co. v. Ayer Timber Co., 131 So.2d 635 (La.App.2d Cir.1961). Royalty Vendees contend that these cases establish that it is not against public policy to extend prescription of mineral servitudes beyond ten years, provided that there is no showing of an attempt to circumvent the rules of prescription. We believe the cases relied on by the Royalty Vendees are not applicable in the case at bar.
Whitehall is an after acquired title case in which the seller oversold his mineral interest. When this interest reverted to the seller after liberative prescription had run, the court said that the after acquired title doctrine allowed this interest to pass to the buyer. Both Ober and Chicago Mill are cases involving the commencement of prescription in contract to sell cases. In both instances the courts ruled that a mineral interest is not transferred until the sale takes place, not the contract to sell. In none of the cited cases was liberative prescription allowed to exceed ten years. All three cases involved the commencement of prescription which is not an issue in this case.
In the present case, there is no question as to the commencement of prescription. Furthermore, we do not believe that the cited cases create any good faith exception to the public policy that mineral interests revert to the owner of the land after ten years nonuser.
For the reasons assigned, the judgment of the district court is affirmed. Costs are assessed to the Royalty Vendees.
AFFIRMED.