350 So.2d 875 (1977)
R. Randolph RICHMOND, Jr.
v.
ZAPATA DEVELOPMENT CORP.
No. 59127.
Supreme Court of Louisiana.
September 19, 1977.
Rehearing Denied October 26, 1977.
*876 J. Harrison Henderson, III, William J. Guste, III, Guste, Barnett & Shushan, New Orleans, for plaintiff-applicant.
Herschel L. Abbott, Jr., Edward B. Poitevent, II, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-respondent.
DENNIS, Justice.
The question presented by this case is whether the presence of drilling structures on land, as visible evidence of a mineral lease, will prevent a buyer of the property, who made no pre-sale inspection, from recovering in warranty from his vendor, who failed to disclose the existence of the lease.
On June 9,1972, defendant Zapata Development Corporation, conveyed to plaintiff R. Randolph Richmond, Jr., by warranty deed a parcel of immovable property located in Iberville Parish comprising some 640 acres. The act of sale declared a number of charges claimed against the property.[1]
*877 Richmond purchased without examining the title or inspecting the premises, and later discovered that the property was being exploited for oil and gas pursuant to a mineral lease by Gay Union Corporation in favor of Gulf Refining Company of Louisiana which had been executed and properly recorded in 1930.
On October 2, 1974, Richmond filed suit against his vendor, Zapata, alleging that the extensive mineral recovery operations conducted under the 1930 Gay-Gulf lease on some 360 acres of the property rendered that portion of the property useless for any purpose other than mineral production and impaired his ability to develop and utilize the remaining 280 acres. Plaintiff alleged that the mineral lessee had placed on the property a network of pipelines, tanks, lines, canals, structures, shacks, offices, houses, drilling equipment, rigs both active and abandoned, roadways and other earthen works, ponds, pits, oil spills and pollutants. Contending that failure to declare the existence of the lease in the act of sale amounted to a breach of Zapata's warranty against eviction, Richmond originally prayed for judgment in the amount of $120,000, but subsequently amended his petition to seek an award of $2,120,000.
Defendant Zapata filed exceptions of no cause of action and prescription, and a motion for summary judgment. In support of the latter motion it attached as exhibits copies of the 1972 act of sale of the property from Zapata to Richmond, a 1971 recorded act of sale of all oil, gas and mineral interests in the property from Southdown, Inc. to Pelto Oil Company, and the 1930 mineral lease from Gay Union Corporation to Gulf Refining Company of Louisiana.
During the six months following the filing of defendant's motion for summary judgment, plaintiff filed no opposing affidavits demonstrating the existence of a material factual dispute. La. C.C.P. arts. 966-67. Subsequently, the district court rendered summary judgment for defendant, finding that Zapata did not warrant the property sold to be free of oil and gas exploration because of the numerous paragraphs in the deed suggestive of mineral activity, especially paragraph (k) which disclosed a 1971 sale of all mineral rights in the property from Southdown, Inc. to Pelto Oil Company. In his reasons for judgment the district judge also expressed his view that, if plaintiff's action were regarded as one in redhibition, it had prescribed.[2]
*878 The court of appeal affirmed, holding that plaintiff Richmond had been apprised, by the inscriptions recited in the deed, of facts sufficient to provoke his examination of the title before purchasing. 339 So.2d 939 (La.App. 4th Cir. 1976). We granted writs to review this decision. 341 So.2d 1126 (La.1977).
In its opinion the appellate court, citing Juneau v. Laborde, 219 La. 921, 54 So.2d 325 (1951), stated our jurisprudence holds that, generally a buyer is not obliged to examine title to immovable property, but where certain facts known to him constitute a warning that further inquiry is needed, and such facts are sufficient to excite inquiry, a duty devolves upon him to investigate his vendor's title. Defendant, Zapata, has called our attention to a number of cases it says also stand for this broad proposition.[3] We find the Juneau case and these decisions inapposite to the instant proceeding as the holding in none of them hinges on the vendor's obligation in warranty owed to the vendee.
Juneau v. Laborde, for example, involved a petitory action brought by heirs to immovable property against a possessor claiming the property on the basis of ten-year good faith acquisitive prescription. La. C.C. art. 3478. This Court found that the possessor was aware of facts which were sufficient to excite inquiry into the validity of his vendor's title, and that a duty devolved upon him to investigate the title before purchasing.[4] However, this rule provides no defense against a vendee who seeks to enforce his vendor's obligations under a warranty deed. In fact, to allow its application in such an action would violate basic principles of warranty against eviction in the civil law and a substantial body of jurisprudence interpreting our Civil Code.
Because the registry laws are intended only as notice to third parties and have no application whatever between parties to a contract, a vendee is under no obligation to search the record in order to ascertain what his vendor has sold and what it has not, and the vendee is entitled, as between himself and his vendor, to rely upon his deed as written. Young v. Sartor, 152 La. 1064, 95 So. 223 (1923). Moreover, as a general rule, in the absence of a stipulation of non-warranty in the act of sale, knowledge of the danger of eviction does *879 not prevent the purchaser from recovering the purchase price upon disturbance of his possession. Scott v. Featherston, 5 La.Ann. 306 (1850) citing Article 2481 of the Louisiana Civil Code of 1825 [La. C.C. art. 2505]; Hall v. Nevill, 3 La.Ann. 326 (1848). See, Comment, Warranty Against Eviction in the Civil Law: Limitations on the Extent of the Vendee's Recovery, 23 Tul.L.Rev. 154, 169-70 (1948). Cf. Collins v. Slocum, 317 So.2d 672 (La.App. 3d Cir. 1975). But see, Culver v. Culver, 188 La. 716, 178 So. 252 (1938), criticized in 23 Tul.L.Rev., supra, at 170.
This accords with the view of a majority of French courts and writers that although such knowledge bars recovery of damages by an evicted buyer who purchases by a deed which does not contain a non-warranty clause, the purchaser is nevertheless entitled to a restitution of the price. 2 M. Planiol, Civil Law Treatise, pt. 1, §§ 1504, 1509 (La.St.L.Inst.Transl.1959); 1 M. Troplong, Droit Civil Explique: De La Vente, § 482 (2d ed.1835); See, Comment, Warranty Against Eviction in the Civil Law, supra, at 160, and authorities cited therein. It is their view that this principle is not provided directly by the warranty provisions of the Code, but results from Article 1599 of the Code Napoleon [La. C.C. art. 2452] which, after declaring that the sale of the thing of another is null, adds that it can give occasion for damages "when the buyer did not know that the thing belonged to another." See, Planiol, id. at 1509.
An exception to the rule is recognized, however, regarding an alleged eviction resulting from the existence of an apparent servitude on the property. In discussing Code Napoleon Article 1638, the French authorities have declared that the only servitudes which give rise to the warranty are those which at the same time are non-apparent and not declared. 2 M. Planiol, Civil Law Treatise, pt. 1, §§ 1493-95. The origin of the distinction drawn between visible servitudes and non-apparent charges against the property was explained by Pothier, who observed:
"A . . . kind of real charges, of which it is the buyer's business not to be ignorant, and against which consequently he cannot claim any warranty, though they are not expressly declared by the contract, consists of visible servitudes, such as those of light and eaves-dropping; of which the buyer cannot be ignorant, since in visiting the house before purchasing it, he cannot avoid seeing the windows or the eaves.
"Are we to include amongst the rights, which it is the buyer's duty not to be ignorant of, a right of champart[5] not seignorial? The reason for doubting is, that the perception of the champart being public and known in the country, it is easy for the buyer to inform himself, and to ascertain before purchasing, whether the estate is subject to that charge.
"* * *
"Notwithstanding these reasons, we must decide, that the seller is bound to warrant against a champart, which is not declared by the contract. A buyer does not buy a house without visiting it in person, or sending some one on his part, nor, consequently, without perceiving the visible servitudes; but, he cannot be instructed of the charge of champart, except by being informed of it, and he may neglect to inform himself, or be deceived in the information, which he receives. * * *" 1 R. Pothier's Treatise on Contracts: Contract of Sale, §§ 200-01 at 123-24 (L. S. Cushing transl. 1839).
Louisiana courts also have adopted the view that a vendor does not warrant the property conveyed as free from apparent servitudes. Lallande v. Wentz & Pochelu, 18 La.Ann. 289 (1866); James v. Buchert, 144 So.2d 435 (La.App. 4th Cir. 1962). Cf. Collins v. Slocum, 317 So.2d 672 (La. App. 3d Cir. 1975). This conclusion may be inferred from La. C.C. art. 2515, which, as Code Napoleon art. 1638, provides that the *880 seller is bound to warrant against undeclared, non-apparent servitudes. The rule is justified as a practical matter for the reasons stated by the French writers. Pothier, supra, and Planiol, supra, § 1494.[6]
In the instant case the undisputed material facts are as follows: The buyer acquired by deed containing no general stipulation of non-warranty. The existence of the Gay-Gulf lease as a charge on the property was not declared in the list of inscriptions bearing upon the property included in the act of sale. See, footnote 1. The extensive mineral development of which plaintiff complains does not flow from any of the charges enumerated in the act of sale, but rather from the 1930 Gay-Gulf lease. The alleged eviction stemmed from an undeclared mineral lease and not an undeclared apparent servitude, but there were on the property ample external signs of mineral production conducted pursuant to this lease.
Hence, if it is the vendee's duty not to be ignorant of apparent mineral leases as well as apparent servitudes, the action in warranty should be refused him, and the vendor would be entitled to judgment as a matter of law. On the other hand, if the vendee is presumed to know only of apparent servitudes, the vendor must respond in warranty because the eviction resulted from a different kind of visible charge which was not declared at the time of the sale.
The Civil Code does not expressly address the issue. It merely indicates that the buyer has a warranty against a servitude which at the same time is non-apparent and not declared. La. C.C. art. 2515. The civilian writers do not seem to have considered whether other charges equally as visible as apparent servitudes are excluded from the vendor's warranty.[7] In discussing the special rules as to servitudes, however, the writers dwell not upon the legal classification of the charge but on the practical question of whether the premises may be examined without perceiving the visible signs of its existence. If the buyer cannot avoid seeing evidence of the charge should he visit the property before the purchase there is no need for the seller to inform him of it. In the event the purchaser is unable to learn of a charge because it is non-apparent, fairness demands that the buyer must either inform him of it before the sale or protect him against eviction.
As the treatise writers, we think paramount importance should be attached to whether the charge produces visible external effects on the property rather than upon the legal classification of the charge. In the present case, for instance, the drilling structures and other artifacts of mineral production would be equally apparent regardless of their source. A simple inspection of the premises would have apprised the buyer of the existence of a significant charge against the property whether it derived from a lease or a servitude. Furthermore, there is probably less difference between a mineral lease and a mineral servitude than between other servitudes and charges. Both are basic mineral rights, and they share many of the same attributes. See, La.R.S. 31:16, 31:21 et seq., 31:114 et seq., and comments. For all these reasons we conclude that, just as an apparent servitude, an undisclosed mineral lease which produces on the property ample signs of its existence is a real charge of which it is the buyer's business not to be ignorant and against which he cannot claim warranty.
*881 For the foregoing reasons, we find there is no genuine issue of material fact in this case and that the defendant Zapata is entitled to judgment as a matter of law. Although we do not approve of the reasons given by the trial court and court of appeal, we conclude they reached the correct result. Accordingly, the judgment of the court of appeal is affirmed at appellant's cost.
Affirmed.
SUMMERS, J., concurs.
DIXON, J., concurs with reasons.
CALOGERO, J., dissents and assigns reasons.
DIXON, Justice (concurring).
I respectfully disagree with the holding of the majority, but concur in the result, because the deed disclosed a sale of all minerals and extensive mineral activity, enough to put the purchaser on notice of probable extensive mineral activity which might result in the surface encroachment of which plaintiff complains.
CALOGERO, Justice (dissenting).
Until rendition of this opinion, there has been no statutory or jurisprudential authority for declaring that a vendee, acquiring by deed containing no general stipulation of non-warranty, and ignorant of "apparent mineral leases," should be denied an action in warranty. In fact this Court has said that a buyer who purchases under a warranty deed has no duty to investigate his title by searching the mortgage and conveyance record or by visiting the property. Young v. Sartor, 152 La. 1064, 95 So. 223 (1922).
I would not extend to "apparent mineral leases" by analogy or otherwise the Codal (inferentially) and jurisprudential rule that a vendor under warranty deed does not warrant property conveyed as free from apparent servitudes. Accordingly I respectfully dissent.____."
NOTES
[1] The deed recited that the "[p]urchaser takes cognizance of the following inscriptions which bear against the property:

a) Right of Way Agreement dated August 6, 1957, from Gay Union Corporation to The Dow Chemical Company, recorded in Conveyance Book 142, Entry No. 97, Records of Iberville Parish, Louisiana, granting an easement for pipeline purposes.
b) Letter agreement dated May 12, 1960, by and between Gulf States Utilities Company and Gay Union Corporation, granting right to extend existing electrical lines.
c) Agreement dated March 16, 1953, from Gay Union Corporation to Humble Pipe Line Company, recorded in Conveyance Book 160, Entry 226, Records of Iberville Parish, Louisiana.
d) Pipeline Right-of-way dated October 4, 1968, from Gay Union Corporation to Humble Gas Transmission Company, recorded in Conveyance Book 181, Entry 396, Records of Iberville Parish, Louisiana.
e) Right of Way Grant dated May 23, 1953, from Gay Union Corporation to Interstate Natural Gas Company, Incorporated, recorded in Conveyance Book 107, Entry 327, Records of Iberville Parish, Louisiana, as amended by Amendment to Right of Way Grant dated October 4, 1968, by and between Gay Union Corporation and Humble Gas Transmission Company, recorded in Conveyance Book 181, Entry 397 of said Records.
f) Agreement dated November 20, 1936, from Gay Union Corporation to Standated [sic] Oil Company of Louisiana, recorded in Convey-ance Book 61, Entry 542, Records of Iberville Parish, Louisiana.
g) Right of Way Agreement dated May 25, 1943, from Gay Union Corporation to Standard Oil Company of Texas, recorded in Conveyance Book 75 Entry 331, Records of Iberville Parish, Louisiana.
h) Right of Way Agreement dated April 29, 1957, from Gay Union Corporation to Temple Hargrove and Freeport Oil Company, recorded in Conveyance Book 139, Entry 26, records of Iberville Parish, Louisiana.
i) Agreement dated January 1, 1970, from Southdown, Inc. to A. L. Carson, granting a grazing lease on the West Half (½) of Section 61, T-9-S, R-12-E, Iberville Parish, Louisiana.
j) Oil, gas and mineral lease from Gay Union Corporation to Davis Oil Company dated June 6, 1969, recorded in Conveyance Book 184, page 394, Entry 339, Records of Iberville Parish, Louisiana, for a primary term of three years and 120 days.
k) Sale of all minerals by Southdown Lands Inc. to Pelto Oil Company in act before Luther E. Hall Jr., N.P., dated May 3, 1971, registered in COB 191 folio 245, Entry 202, Parish of Iberville, Louisiana.
l) Right of Way Servitude between Zapata Development Corporation and Humble Pipe Line Col, [sic] dated March 14, 1972 registered in C.O.B. ______ folio ______"
[2] In this Court defendant reurged its exception of prescription, contending that plaintiff alleged a cause of action in redhibition which was barred by one year liberative prescription. La. C.C. art. 2534; Yeargain v. Blum, 144 So.2d 756 (La.App. 4th Cir. 1962); Pursell v. Kelly, 139 So.2d 12 (La.App. 4th Cir. 1962); Crowley Grain Drier, Inc. v. Fontenot, 132 So.2d 573 (La.App. 3d Cir. 1961). As we understand plaintiff's petition, however, he is not seeking avoidance of the sale or reduction of the price because of hidden defects in the property. See, La. C.C. art. 2520 et seq. On the contrary, he alleges that he has been partially evicted by the admittedly apparent mineral activity on the property and prays for recovery because the lease from which the mineral production stemmed is alleged to be a charge on the property against which his vendor gave its warranty. See, La. C.C. arts. 2500-19. In view of our conclusion that Zapata did not warrant the property to be free of visible mineral production, we find it unnecessary to express any opinion respecting defendant's plea of prescrition.
[3] Wells v. Joseph, 234 La. 780, 101 So.2d 667 (1958) (suit to quiet title in property purchased by plaintiff's ancestor in title at tax sale); Dugas v. Powell, 207 La. 316, 21 So.2d 366 (1945) (petitory action by alleged heirs against vendee of others claiming to be sole heirs of the property); Tyson v. Spearman, 190 La. 871, 183 So. 201 (1938) (petitory action by owner against defendant claiming property by ten-year good faith acquisitive prescription); Breaux-Renoudet Cypress-Lumber Co. v. Shadel, 52 La.Ann. 2094, 28 So. 292 (1900) (suit by owner for injunction and money damages against defendant who claimed one-half interest in property on basis of non-warranty deed); Thibodeaux v. Quebodeaux, 282 So.2d 845 (La.App. 3d Cir. 1973) (petitory action by owner against defendant claiming property by ten-year good faith acquisitive prescription); Ilgenfritz v. Normann, 290 So.2d 441 (La.App. 4th Cir. 1974) (suit by lessees claiming occupancy against defendant, who occupied by virtue of his timely exercise of option to renew his previously recorded lease); Board of Commissioners for the Lafourche Basin Levee District v. Elmer, 268 So.2d 274 (La.App. 4th Cir. 1972) (suit by Board to annul tax sale against defendant claiming ownership by ten-year good faith acquisitive prescription); Malone v. Fowler, 228 So.2d 500 (La.App. 3d Cir. 1969) (suit by plaintiffs to partition property by licitation; issue is defendant's claim of ownership in property by virtue of ten-year good faith acquisitive prescription); La Fleur v. Fontenot, 93 So.2d 285 (La.App. 1st Cir. 1957) (petitory action by plaintiffs against defendant claiming ownership by ten-year good faith acquisitive prescription); Hasslocher v. Recknagel, 160 So.2d 421 (La. App. 2d Cir. 1964) (suit by plaintiffs claiming rights to minerals by virtue of unrecorded deed against purchasers of property); Lynn v. Lafitte, 177 So. 83 (La.App. 2d Cir. 1937) (plaintiff claimed ownership of movable property stolen from him and later sold to defendants).
[4] In Juneau, defendant had called his vendor in warranty, and this Court found the record insufficient to support a ruling on the extent of the vendor's liability under his warranty obligations to the defendant. By implication the case suggests that the duty of the vendee to investigate title does not apply to bar his claim in warranty against his vendor.
[5] Champart is defined as: "A land rent, or charge upon land, consisting of a fixed part of the produce; also, the tenure by which land is held upon payment of such a rent * * *." Webster's New International Dictionary of the English Language (2d ed. Unabridged, 1950).
[6] "If the servitude is apparent, or if not apparent it was announced to the buyer, he has no recourse. Of what can he complain if he buys with full knowledge? Of what again should he complain if he did not examine the property himself and did not see the external signs showing the servitude? For the same reason, and even though the law does not say so, one should refuse any action in warranty to the buyer who had in fact, by whatever means, knowledge of a servitude or of an apparent charge, which the vendor has omitted to declare. The vendor did not have to inform him of a thing which he already knew, and it would be a deceit on his part to afterwards plead that he had not been warned. * * *" 2 M. Planiol, Civil Law Treatise, § 1494 (La.St. Law Inst, transl. 1959).
[7] Planiol, however, implies this in at least one instance. 2 M. Planiol, Civil Law Treatise, § 1494 (La.St.Law Inst.transl.1959).