362 So.2d 1130 (1978)
Ira C. DILLON, Plaintiff-Appellant,
v.
Harold G. MORGAN, Defendant-Appellant.
No. 13553.
Court of Appeal of Louisiana, Second Circuit.
August 28, 1978.
Rehearing Denied October 11, 1978.
*1131 McConnell & McConnell by S. David Holladay, Springhill, for plaintiff-appellant.
Fish & Montgomery by Roy M. Fish, Springhill, for defendant-appellant.
Before PRICE, HALL, MARVIN, JONES and FLENIKEN (assigned), JJ.
En Banc. Rehearing Denied October 11, 1978.
MARVIN, Judge.
The issue is whether a seller of land by warranty deed may claim against his purchaser a servitude of one-half minerals reserved in the deed by the seller, when the seller failed to declare to the purchaser an earlier created servitude of one-half minerals affecting the land.
When the defendant in this declaratory judgment action purchased the property in 1969, his vendor, Dean, reserved one-half the minerals. In 1973, defendant sold the land by warranty deed to the plaintiff, reserving to defendant one-half the minerals. The existence of the Dean servitude was not declared by defendant and was not otherwise *1132 revealed to plaintiff by visible signs as in Richmond v. Zapata Development Corp., 350 So.2d 875 (La.1977).
The lower court's judgment declared plaintiff to be the "owner" of one-fourth minerals, reasoning that the minerals would be "owned" one-half by Dean, one-fourth by plaintiff and one-fourth by defendant because defendant had only one-half to reserve.[1] There is no evidence that this was the intent of the parties.[2] Both parties appeal. On reargument before a five-judge panel as required by Art. 5, Section 8(B), Louisiana Constitution, we reverse.[3]
At the outset, we find that defendant was obligated to deliver to plaintiff and warranted to plaintiff, title to the land, subject only to the reservation of a mineral servitude of one-half minerals by defendant. C.C. Art. 2475. The sale of land includes mineral rights that are not expressly reserved or excepted (Herring v. Price, 4 So.2d 17 (La.App.2d Cir. 1941); Powell v. Roy, 130 So. 629 (La.App.2d Cir. 1930)) unless there are visible signs on the land of the existence of those rights being exercised by another (Richmond, supra). C.C. Art. 2515.
Conceptually, the obligation to deliver is different from the obligation of warranty. See and compare C.C. Arts. 2477-2499, 1907, 1924 with C.C. Arts. 2500-2519, 1905, 1926-1929. The seller is bound to explain himself clearly with respect to the extent of his obligations. C.C. Art. 2474.
Warranty is in essence a continuing guarantee to the buyer by the seller-warrantor and one of its principal objectives is maintaining the buyer in peaceable possession of the property. C.C. Art. 2476. The buyer may call upon the seller in the event the buyer is evicted because of the right or claim of a third person. C.C. Arts. 2500-2519.
If the seller fails to deliver that which he has obligated himself to deliver, the contract of sale may be enforced against the seller by the buyer by specific performance or other remedy. C.C. Arts. 1926, 2485, 2491.
The articles regarding the obligations of the seller-warrantor supply the basis for the result in cases such as Hodges v. Long-Bell Petroleum Company, 240 La. 198, 121 So.2d 831 (1960) and Gaines v. Crichton, 187 La. 345, 174 So. 666 (1937) wherein the principle of enforcing the seller's obligations was couched in terms of estoppel, by warranty or by deed. By whatever name, the principle is sound that a seller should not be allowed to obligate himself to deliver and to warrant title and peaceable possession to a buyer of a thing and then by his own act or claim to derogate from, or to assert rights to the thing contrary to, his obligations. Thus, in Hodges, the sellers under a warranty deed, who reserved a mineral servitude in 1938 and who failed to declare to the buyer the existence of a mineral servitude created in 1931, were estopped or not allowed to assert against the buyer their rights under the 1931 servitude.
*1133 Here, the seller shall not be allowed to derogate from his obligations in the contract of sale. When the existence and validity of the earlier Dean servitude of one-half minerals is recognized, it is impossible to uphold on the one hand, defendant's reservation of one-half minerals, while upholding on the other hand, defendant's obligations of delivery and of warranty of the right to explore and exploit one-half the minerals. There cannot be three halves in a whole. Because of his obligations in the contract of sale, defendant cannot assert against the buyer his claim to the servitude of one-half minerals reserved in the deed.
In Hodges, the buyer was not allowed to assert any claim contrary to the contract of sale by which he acquired the property, in effect making the "estoppel" a two-edged sword. Defendant here alternatively urges that because plaintiff knew he was "getting" only one-half minerals, plaintiff should be similarly barred from asserting ownership of all the minerals if and when the Dean servitude is extinguished.
Projecting defendant's alternative argument in this respect would produce this result in mineral "ownership," assuming no interruption or suspension of liberative prescription:

1969 Dean ½ Defendant, as
 landowner ½
1973 Dean ½ Plaintiff, as
 landowner ½
1979 Defendant ½ Plaintiff, as
 landowner ½
1983 Landowner, in perfect ownership

It is true that defendant's dealing with the mineral rights underlying the property, in effect, produced problems similar to those produced by an "oversale" of minerals by a landowner. Defendant agreed to the acquisition by Dean of one-half minerals in 1969. Defendant attempted to acquire for himself one-half minerals in 1973, at the same time conveying to plaintiff one-half minerals. See Arts. 77, 78 and 79, Louisiana Mineral Code, and Comments following, statutorily recognizing the after-acquired title doctrine in oversale situations.
While defendant's alternative argument appears to have equitable merit, it cannot withstand close scrutiny. Only the landowner is empowered to create the mineral servitude. Art. 24, Louisiana Mineral Code. Articles 76, 77, 78 and 79 of the Mineral Code concern a true oversale of minerals by a landowner whose obligation, like that of the defendant here, is to deliver that which he has sold and guaranteed (warranted). The plaintiff in this case did not oversell the minerals. Instead, it was the defendant, if indeed it can be said that there was an oversale as contemplated by the Mineral Code. Plaintiff here did not obligate himself in the 1973 deed to deliver to or to warrant to the seller any fractional mineral right. The "estoppel" was applied to the buyer in Hodges because the buyer had not been evicted in any respect from that which the sellers sold. Hodges was not an oversale because the sellers did not obligate themselves to deliver or to warrant any mineral rights to the buyer. Here the seller obligated himself to deliver and to warrant to the buyer one-half the mineral rights and here the eviction of the buyer of this right is caused by the seller's claim to one-half mineral rights.
While it is true that a buyer who goes into possession is not allowed to dispute his seller's title while he remains in possessionour understanding of the basis of the estoppel of the buyer in Hodges certainly a buyer may enforce the obligations against his seller when it is the seller's actions which cause eviction of the buyer. See Consolidated-Progressive Oil Corp. v. Standard Oil Co., 158 La. 982, 105 So. 36 (1925).
Defendant's alternative argument is an attempt to have recognized his reversionary right to the expectancy of extinction of the outstanding Dean servitude, contrary to Art. 76, La. Mineral Code and Hicks v. Clark, 225 La. 133, 72 So.2d 322 (1954). The after-acquired title doctrine which has been incorporated into our Mineral Code was developed in Louisiana as a means of enforcing the seller's obligations to the buyer and not vice versa. See Comment, Mineral Rights and After-Acquired Title, 18 La.L.R. 312.
*1134 Defendant also contends that plaintiff's remedy is for breach of warranty because plaintiff's eviction, if any, is only partial. Declaratory relief is available and is not precluded to plaintiff even though other relief is available. C.C.P. 1871, et seq.
Accordingly, judgment below is reversed at the cost of defendant-appellant and there is judgment in favor of plaintiff, Ira C. Dillon, declaring that in that certain deed under Register No. 237190, Webster Parish, Louisiana, dated January 10, 1973, plaintiff acquired, with the property described:
"Begin at the Southwest Corner of the Northeast Quarter of the Southwest Quarter (NE¼ of SW¼), Section 31, Township 23 North, Range 10 West, Webster Parish, Louisiana, thence run East along the South Line of said NE¼ of SW¼, 373 feet to the point of beginning; thence continue East along the South Line of said NE¼ of SW¼, 600 feet; thence run North 305 feet; thence run West 343 feet; thence run South 63 feet; thence run West 257 feet, more or less, to a point due North of the point of beginning; thence run South 242 feet to the point of beginning, containing 3.8 acres, more or less.
ALSO: The North 780 feet of the Southeast Quarter of the Southwest Quarter (SE¼ of SW¼), Section 31, Township 23 North, Range 10 West, Webster Parish, Louisiana, less three (3) acres sold to Johnny Green described in Volume 414, Page 145, of the Webster Parish Conveyance Records."
the right to explore for and produce and reduce to his possession as an element of perfect ownership of land, one-half of all the minerals of any nature whatsoever underlying the property, and that this right of plaintiff shall be superior to and shall take precedence over the attempt by defendant, Harold G. Morgan, in said deed to create a mineral servitude by reserving to himself one-half of all the oil, gas, and other minerals underlying said property.
REVERSED AND RENDERED.
PRICE, J., dissents with written reasons.
HALL, J., dissents for reasons assigned by PRICE, J.
BOLIN, J., recused.
PRICE, Judge, dissenting.
Ira C. Dillon brought this action to be declared the owner of an undivided one-half interest in the minerals under a tract of land purchased by him from defendant, Harold G. Morgan.
The pertinent facts are as follows: On February 8, 1969, defendant purchased the subject property along with other acreage in Webster Parish from Ray T. Dean who reserved one-half of the minerals. On January 10, 1973, defendant sold plaintiff a portion of the land he acquired from Dean and reserved one-half the minerals to himself. The deed, which was prepared by plaintiff's attorney, provides for an express warranty of "full guarantee of title" and did not acknowledge the existence of the prior reservation of one-half the minerals by Dean in 1969.
Plaintiff contends that in view of the outstanding mineral servitude at the time of the sale, the express warranty of title estops defendant from claiming the ownership of the other one-half interest in the minerals.
Defendant contends that plaintiff had either actual or constructive knowledge of Dean's prior reservation and has no claim under warranty for not receiving any interest in the minerals under the property sold to him. Defendant has not proven by a preponderance of the evidence that he declared the existence of the prior servitude to plaintiff at the time of the sale, nor can it be said that plaintiff had constructive knowledge because of the title examination by the attorney who prepared the act of sale as the opinion was directed to a lender and was for a restricted purpose. Therefore, having reserved only one-half of the minerals to himself in the deed, defendant warranted to plaintiff that there was no outstanding servitude affecting the other one-half.
*1135 Defendant alternatively contends that if his warranty is so construed to guarantee plaintiff one-half of the minerals, then plaintiff's action is one of partial eviction and his remedy is limited to rescission of the contract or reduction of the purchase price. This remedy is in accord with the provisions of the Civil Code and is the relief to which plaintiff is entitled.
While it may be that defendant owes plaintiff an obligation under warranty for failing to declare the existence of the nonapparent servitude which encumbered the title to the property conveyed, this factor does not operate to nullify the grant to him of an undivided one-half of the minerals by the reservation clause of the deed. I am unaware of any Louisiana case which has allowed one party to use estoppel by deed to divest a second party of a real right established in a conveyance. Plaintiff's relief lies under the Civil Code articles providing for the warranty of the seller in the case of an eviction. La. C.C. Arts. 2500-2514. Herring v. Price, 4 So.2d 17 (La.App.2d Cir. 1941).
An eviction from title may result in the loss of the totality or a part of the thing sold due to claims of a third person. La. C.C. Art. 2500. The eviction of this case is only partial since plaintiff is undisturbed in his title to the surface of the land. Therefore, plaintiff's remedy is to either have the sale cancelled, if the part from which he was evicted is of such a consequence that he would not have purchased it without the part, or to receive the value of the part in a proportion that the part bears to the total sale price. La. C.C. Arts. 2511, 2514.
The majority opinion is in error in applying the equitable doctrine of estoppel by deed to the circumstances presented here. Estoppel by deed, when applied correctly, merely means the contract speaks for itself. Neither party can abrogate the terms of the contract, which in this case specifically reserved to the seller a servitude of a one-half interest in the minerals. Therefore, under a proper application of the equitable principle relied on, neither the buyer nor the seller could claim that the other did not own a one-half interest in the minerals. This would lead to an impossible result since a one-half interest cannot be given to both the buyer and the seller.
La. C.C. Art. 21 provides for the resort to equity only in the absence of specific codal provisions on the question at issue. The Civil Code prescribes specific relief for the buyer under the circumstances presented here in Articles 2500-2519.
The effect of the majority opinion is to reform the contract and to take a validly created mineral servitude from the seller and to give it to the buyer, a result which was never intended by both parties to the contract. This leaves the seller with no interest whatsoever in the minerals, yet the purchase price remains the same. Therefore, the proper solution is that provided by the Civil Code.
The decisions relied on for application of the doctrine of estoppel by deed in the majority opinion, Hodges v. Long-Bell Petroleum, 240 La. 198, 121 So.2d 831 (1960) and Gaines v. Crichton, 187 La. 345, 174 So. 666 (1937), present circumstances that are distinguishable from this case.
Hodges simply held that the vendor, Long-Bell Petroleum, by using language in a conveyance tending to establish a new mineral servitude by a reservation clause was estopped to claim any other mineral interest against the purchaser, Hodges, other than that which could be effective at that time under the reservation.
Gaines merely applied estoppel to preclude a person who bought and sold property as a "trustee" from later claiming the benefit of suspension of the running of prescription against a mineral servitude because he was in fact trustee for minors which was not disclosed in the deed in question.
Neither of these decisions can be used as authority for divesting the defendant of the mineral servitude legally reserved in the act of conveyance.
I agree that the trial court judgment should be reversed, but respectfully dissent from the majority opinion insofar as it declares *1136 plaintiff is entitled to the ownership of the mineral servitude created in favor of defendant in the conveyance between the parties on January 10, 1973. Since plaintiff has not demanded any relief under the applicable codal articles, and as there is insufficient evidence in the record concerning the nature, the size, or the value of the land and mineral interests from which an accurate award can be determined, this action should be dismissed reserving to plaintiff the right to seek the appropriate remedy in a separate action under proper pleadings.
NOTES
[1] "Ownership of land does not include ownership of oil, gas, and other minerals . . . The landowner has the exclusive right to explore and develop his property for the production of such minerals and to reduce them to possession and ownership." R.S. 31:6, La. Mineral Code. Nonetheless, and however incorrect, "[t]he Louisiana mineral conveyancing system has a strong flavor of those [systems] in ownership jurisdictions." Comment, R.S. 31:5, and cases cited therein.

When granted by the landowner to another, this right is a mineral servitudewhich in the absence of visible signs of its use is a nonapparent servitude burdening the land that must be declared by the seller of the land to his purchaser under a warranty deed or otherwise revealed to the purchaser to avoid the effect of the warranty. R.S. 31:5, 6, 21 and cases cited in Comments following; Richmond v. Zapata Development Corp., supra; C.C. Art. 2515.
[2] Defendant testified that he was reserving the one-half minerals which were not reserved by Dean. Plaintiff testified that he was acquiring one-half minerals with the land subject to defendant's attempted reservation of one-half minerals. Plaintiff's title was not examined before purchase.
[3] From a proposed reversal of the lower court on our original hearing, one judge of the three-judge panel dissented as to the proposed result reached by that panel. This rehearing followed.