521 So.2d 570 (1988)
Lloyd O. BESSE and Julie Cotton Besse
v.
Richard S. BLOSSMAN, Jr., et al.
No. 87 CA 0117.
Court of Appeal of Louisiana, First Circuit.
February 23, 1988.
*571 Douglas C. Ellis, Covington, for plaintiffs/appellants.
John Sneed, New Orleans, for defendant/appellee Fred Earhart.
Richard Muller, Mandeville, for defendant/appellee Kelly McHugh & Associates.
William J. Jones, Jr., Covington, for defendant/appellee Richard S. Blossman.
Before COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
SAVOIE, Judge.
Plaintiffs/appellants, Lloyd Besse and Julie Besse, filed suit against defendant/appellee, Richard S. Blossman, Jr. on January 29, 1985, seeking a rescission of a contract of sale of immovable property and damages or, in the alternative, a reduction of the purchase price. Also joined as defendants in the suit were Frederick Earhart, the closing attorney at the act of sale; and Kelly McHugh & Associates, who prepared a survey of the property for the appellants.
Prior to trial, appellants dismissed both Frederick Earhart and Kelly McHugh & Associates with prejudice.

FACTS
On December 30, 1983, appellants purchased by warranty deed, a lot and house from the appellee. The purchase price for the lot and home was $83,500.00. The property which appellants purchased was burdened with a servitude of right of way for a power line which traversed the easterly side of the property. The power line was evidenced by several large metal towers with girders on the top from which the utility lines were suspended. The power lines belonged to Central Louisiana Electric Company, Inc. (CLECO). Appellants testified unequivocally that they were aware of the power lines before they went to the act of sale.
At appellants' request, Kelly McHugh & Associates prepared a survey of the property for the appellants, the cost of which was paid by the appellants at the act of sale. This survey was introduced into evidence at trial, and it erroneously indicated that a 100 foot servitude of right of way existed on the property when in fact the correct width of the right of way was later found to be 125 feet.
Appellants also testified that they were told by the closing attorney and the realtor that a 100 foot right of way existed on the property.
Approximately three months after appellants moved into the house, they began preparations to construct a garage on the easterly side of their house. However, upon noticing the preliminary work on the garage, a representative of CLECO halted the project. Appellants allege that they were informed for the first time by the CLECO representative that the right of *572 way on the property was 125 feet wide rather than 100 feet wide.
According to the testimony of appellant, Lloyd Besse, the proposed garage was to be located approximately 15 feet from the house. The proposed garage encroached approximately 10 feet into the right of way. The 125 foot right of way of which appellants complain has been a part of the public records in St. Tammany Parish since May 25, 1957.
In addition to the right of way problems, appellants claim that upon moving into the house in January of 1984, they began noticing incomplete work in different rooms of the house.
In January of 1985, appellants filed suit against appellee seeking to rescind the sale or, in the alternative, a reduction in the purchase price. The suit was based on the seller's warranty against eviction under La. Civil Code Articles 2500 through 2519 and on the sellers warranty against the existence of redhibitory defects under La.Civil Code Articles 2520 through 2548. Appellants also sought damages in the nature of mental anguish and inconvenience due to the alleged problems with the property and house. The suit was tried on August 4, 1986.

ACTIONS OF THE TRIAL COURT
The trial court ruled in favor of appellee and held that appellants were not entitled to rescind the sale. However, the trial court did find that a reduction of $11,000.00 in the purchase price was warranted. The trial court rejected appellants' claim for mental anguish. The trial court also rejected appellants' claim for damages resulting from a defective septic tank located on the premises.
The trial court awarded appellants damages in the amount of $1,000.00 for the "loss of usable" area which resulted from the existence of 125 foot right of way. The trial court also found that appellants were entitled to $285.49, which was the amount spent in preparation for the construction of a garage on the premises. The trial court awarded appellants $1,000.00 for attorney's fees and the costs of the trial court proceedings.
Lastly the trial court also found that appellants had been inconvenienced by the problems which they had encountered with the property and house, and awarded $1,000.00 to compensate them for this inconvenience.
Appellants filed a devolutive appeal and listed four assignments of error. Appellees answered the appeal claiming five assignments of error. However, all assignments of error can be concisely covered by review of the following issues:
1. Whether the trial court was correct in denying appellants' claim for rescission of the sale; and in granting appellants a reduction in the purchase price of the house.
2. Whether the trial court was correct in denying appellants' claim for mental anguish.
3. Whether the trial court was correct in denying appellants' claim for damages for a defective septic tank.
4. Whether the trial court was correct in finding that appellants were entitled to an award for the "loss of usable area" and reimbursement of costs incurred in preparation for building a garage.
5. Whether the trial court was correct in denying appellants' claim for damages for partial eviction.
6. Whether the trial court was correct in awarding appellants attorney's fees.
7. Whether the trial court was correct in awarding appellants damages for inconvenience.

ISSUE NO. 1
The trial court ruled that appellants were not entitled to a rescission of the sale based on the seller's warranty against eviction due to the fact that the right of way in this case was an apparent charge on the property and the seller did not warrant its nonexistence. We agree. Louisiana courts have adopted the view that a vendor does not warrant the property conveyed as free from apparent servitudes. Richmond v. Zapata Development Corp., 350 So.2d 875 (La.1977).
*573 The trial court also stated that the sale would not be rescinded "on the basis... that the thing sold was so useless to the purchasers in the state that it was sold that it must be presumed they would not have bought it knowing of these defects. These are defects which can be cured...." The trial court found that redhibitory defects existed at the time of sale to such an extent as to warrant a reduction in the purchase price of the house. The trial court has the discretion to deny a rescission of the sale if a reduction in the purchase price is more appropriate. LSA-C.C. art. 2543; Wade v. McInnis-Peterson Chevrolet, Inc., 307 So.2d 798 (La.App. 1st Cir. 1975). Such a finding is supported by the record.
A principal element in formulating the amount of the reduction in the purchase price is the cost of repairs. Griffin v. Coleman Oldsmobile, Inc., 424 So.2d 1116 (La.App. 1st Cir.1982). The trial court based the amount of the award of $11,000.00 on the costs of repairs. To recover in an action in quanti minoris, a party must prove a latent defect, its existence at the time of sale, and the extent of reduction. Abshire v. W.D.L. Investments, Inc., 428 So.2d 1145 (La.App. 1st Cir.), writ denied, 433 So.2d 161 (La.1983). Appellee contends that some of the defects for which the trial court allowed recovery were apparent at the time of the sale and therefore, were not redhibitory under LSA-C.C. art. 2521.
Most of the defects for which appellants received recovery were clearly latent defects and not apparent at the time of sale.[1] However, some defects for which appellants received recovery should have been discovered by the appellants by "simple inspection." Such defects are apparent defects and not subject to recovery in redhibition. This court finds that the following defects were apparent:
(1) On the exterior well house several boards were not properly nailed, a door was not properly hung, necessary hardware was not provided, and wood was not painted. Repair cost$187.50.
(2) Vinyl flooring in laundry room and kitchen was dented and not level. Repair cost$750.00.
We must therefore conclude the trial court erred in finding the above listed defects to be nonapparent and we reduce the award in quanti minoris from $11,000.00 to $10,062.50.

*574 ISSUES NOS. 2 & 3
The trial court denied appellants' claim for mental anguish due to the lack of medical evidence presented by appellants. The trial court also denied appellants' claim for damages resulting from a defective septic tank. We find that appellants did not carry their burden of proving mental anguish and did not prove that the problems with the septic tank were the result of redhibitory defects. The trial court did not err in denying appellants' claims for such damages.

ISSUE NO. 4
The trial court awarded appellants damages for the "loss of usable area", which resulted from the existence of the 125 foot servitude, as well as $285.49 as reimbursement for costs incurred in preparation for construction of a garage. The trial court characterized each award as an element of damages under appellants' redhibition claim. The award for "loss of usable area" was improperly based in redhibition. This claim should have been judged according to the codal provisions dealing with the seller's warranty against eviction and denied for the reasons set out under Issue No. 1.
In addition, the award of reimbursement of costs was incident to the award of damages for the "loss of usable area." Therefore the award of reimbursement of costs was also improper.

ISSUE NO. 5
Appellants' claim of partial eviction arises from the fact that the right of way was 125 feet wide rather than 100 feet wide.
The document creating the 125 foot right of way was filed for record with the clerk of court in St. Tammany Parish, on May 10, 1957; and was recorded in the conveyance records on May 25, 1957.
Utility poles and lines placed on the right of way were visible to appellants. Electric power transmission lines are considered apparent servitudes. Lake, Inc. v. Louisiana Power & Light Co., 330 So.2d 914 (La.1976). As set forth earlier, a vendor does not warrant the property conveyed as free from apparent servitudes. Richmond, 350 So.2d at 879. The court cited the general rule that:
Because the registry laws are intended only as notice to third parties and have no application whatever between parties to a contract, a vendee is under no obligation to search the record in order to ascertain what his vendor has sold and what it has not, and the vendee is entitled, as between himself and his vendor, to rely upon his deed as written.
Id. at 878. The court later cited the exception to the above stated rule as follows:
"An exception to the rule is recognized, however, regarding an alleged eviction resulting from the existence of an apparent servitude on the property ..."
Id. at 879.
In Dunlap v. Red River Waterway Commission, 405 So.2d 655 (La.App. 3rd Cir.1981), writs denied, 409 So.2d 651 and 410 So.2d 761 (La.1982), the court went a step further by stating that the purchaser has a duty to investigate the vendor's title in order to determine the extent of an apparent servitude. Even though appellants claim that they were advised that the servitude was 100 feet wide, they had a duty to investigate the seller's title in order to determine the extent of the apparent servitude. The servitude at issue was of record and the extent of such servitude could have been discovered. The trial court was correct in denying appellants' claim for damages for partial eviction.

ISSUE NO. 6
The trial court awarded the appellants attorney's fees on the basis that the seller of the house was also the builder/manufacturer. A manufacturer is presumed to have knowledge of the defect in the thing he manufactured and is therefore deemed to be in bad faith and liable to the purchaser for attorney's fees. LSA-C.C. art. 2545. The trial court's award of attorney's fees was proper.

ISSUE NO. 7
The trial court awarded appellants $1,000.00 in damages as compensation for *575 the inconvenience experienced by appellants. The seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of the price and repayment of expenses, is answerable to the buyer in damages. LSA-C.C. art. 2545.[2] The damages for inconvenience were awarded to compensate the appellants for having to reside in a defectively constructed house. Gitschlag v. U.S. Home Corp., 506 So.2d 1236 (La.App. 1st Cir. 1987). The trial court was not clearly wrong in granting this award.

DECREE
For the above reasons, the judgment of the trial court is reversed insofar as it awards appellants $1,000.00 for the "loss of usable area" and $285.49 as reimbursement for costs incurred in preparation for construction. The trial court judgment is amended to reduce the award in quanti minoris from $11,000.00 to $10,062.50. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are assessed equally against appellants and appellee.
REVERSED IN PART, AMENDED IN PART, AND AFFIRMED IN PART.
NOTES
[1] Appellee feels that the following defects were improperly classified as redhibitory defects:

(1) Nails were not countersunk in the weatherboards and the weatherboards didn't have proper overlap.
(2) Bottom trim broken loose on an outside window closest to the front of the house.
(3) Weatherboards were not primed before installation.
(4) Trim around exterior windows breaking loose.
(5) Rear wooden door is cracking. In this regard, the expert stated "Its a wooden door and its a common defect that happens with wooden doors."
(6) Front railing post coming loose and one post was rotten.
(7) On the exterior well house several boards were not properly nailed, a door was not properly hung, necessary hardware was not provided, and wood was not painted.
(8) Wiring coming out of the well house was not in conduit pipe, electric control panel "never worked", and wire running to the ground was "actually visible."
(9) Shelving in wall fell due to the fact that the longer walls had only two brackets to hold the shelves.
(10) Light fixture in the ceiling fans in the master bedroom never worked properly.
(11) No light over the mirror in the master bath.
(12) Towel bars in bathroom were unable to hold towels.
(13) Sheetrock has cracks in corners, around doors and around windows. In other areas there are sheetrock seams and nails showing.
(14) Vinyl flooring in laundry room and kitchen was dented and not level.
(15) Kitchen cabinets need adjusting and the microwave is not secured to the wall.
(16) Formica top in the kitchen did not have a good fit. One side is higher than the other side.
(17) Baseboard molding coming loose.
(18) Flooring in the east and west upstairs bedrooms were loose.
(19) Windows very hard to open and close and door needs adjustment.
(20) A ground rod for a temporary pole was left in the ground and owner couldn't remove it.
(21) Oval type glass insert for the front door does not fit flush in the door and has been that way "from day one."
[2] Liability for damages caused by a redhibitory defect include damages for inconvenience. Rasmussen v. Cashio Concrete Corp., 484 So.2d 777 (La.App. 1st Cir.1986).