GUIDRY, Judge.
The trial court in written reasons for judgment accurately sets forth the facts giving rise to this litigation as follows:
On June 30, 1987, F. Jackie Comb, Michael Comb, and Rickie W. Comb (hereinafter the Combs) filed a petition for damages, alleging that the defendant, Grady Dugas (hereinafter Dugas) had breached the warranty of peaceable possession provided for within Louisiana Civil Code Articles 2692, 2703, and 2704. The following chronology of events led up to the claim by the Combs against Dugas.
On July 2, 1975, Gentry Stuart, Edward Stuart, and Katherine Stuart Keys (hereinafter the Stuarts), executed as lessors a ten-year predeal (sic) lease in favor of Grady Dugas, lessee, and among such properties leased was fifty-one acres in the southesst quarter of Section 19, Township 9 South, Range 7 East.
In this lease the parties agreed that Mr. Dugas was to utilize the property only for raising crops and the Stuarts specifically reserved the rights to conduct oil and gas exploration activities on this parcel of land, as well as others.
On December 2, 1982, the Stuarts, in accordance with their reserved rights, executed an oil and gas lease in favor of Lyons Petroleum, Inc., lessee. This oil and gas lease allowed Lyons the right to explore for oil and gas in the same region as that previously leased to Dugas in 1975. In this oil and gas lease the Court finds that Lyons agreed to indemnify anyone for damages that were caused by their operations. Paragraph 8 says: ‘The Lessee shall be responsible for all damages to timber and growing crops of-Lessor caused by Lessee’s operations.’ The words ‘to timber and growing crops of Lessor’ are lined through and initialed by the parties to the lease. This oil and gas lease was subsequently recorded in the conveyance records of St. Martin Parish. In 1983 Mr. Dugas ceased farming activities on the property he had leased from the Stuarts. It is then that Mr. Dugas sublet the subject property to the Combs. This lease to the Combs was an oral agricultural lease which affected the same property on which Lyons held a valid oil and gas lease. The sublease provided that Dugas was to receive one-fifth of all crops as the consideration. The Combs then began farming operations on this property and continued to do so.
In August of 1985, Lyons Petroleum then began drilling and exploration activities, all in accordance with its previously recorded oil and gas lease from the Stuarts, on the same property which Du-gas has [sic] sublet to the Combs. In the conduct of its operations Lyons damaged standing crops of the Combs as well as creating other damages of which the Combs now seek compensation. The Combs now seek recompense from Du-gas for his alleged breach of the lessor’s warranty of peaceable possession. The Combs claim Dugas breached this warranty when he failed to warn them of the superior rights which Lyons held at the time Dugas verbally leased the property to them.
Litigation then followed, with Dugas suing Lyons Petroleum on April 3, 1986, for damages occasioned to the property which he had sublet to the Combs. Du-gas later settled with Lyons, after having received one-fifth of the alleged damages occasioned by Lyons’ activities. Assessment of the damages was presumable [sic] based upon the eyeball figure provided by the St. Martin Parish County Agent. For reasons unknown to this Court, the Combs also released Lyons for an undisclosed consideration.[1] The Combs then instituted the present proceedings against Dugas on June 30,1987, claiming damages as a result of Dugas’ *1132 breach of the warranty of peaceable possession.”
The trial court concluded that, at the time the oral sublease was confected, the sublessees were sufficiently notified by sublessor of the possibility that oil and gas drilling operations could be conducted on the property sub-let by the owner or their oil and gas lessees, a circumstance over which the sublessees would have no control except for reimbursement from the oil company for all damages caused by the mineral operations. Having so concluded, the trial court, relying by analogy on our Supreme Court’s decision in Richmond v. Zapata Development Corp., 350 So.2d 875 (La.1977), concluded that:
“... [T]he Combs knowledge that oil exploration activities would occur on the property in question is sufficient to deny them damages under a theory of Dugas’ alleged breach of peaceable possession. The Combs could have and may indeed have sought compensation for damages from Lyons, by virtue of the stipulation pour autrui contained within Paragraph 8 of Lyons’ oil and gas lease. See Andrepont v. Acadia Drilling Company [255 La. 347], 231 So2d 347 (La.1969). This Andrepont case decided by our Supreme Court in 1969 clearly establishes a cause and right of action in favor of a farming tenant against a mineral operator that causes damages to his crops. Because of this, and the Combs’ knowledge of the pre-existing [sic] mineral lease, the Court is unable to award any damages sought by the Combs.... ”
The record supports the trial court’s factual determination that when the oral sublease was confected, the warranty of peaceable possession was limited or modified such that the sublessee’s rights to the property were taken subject to the landowner and/or its mineral lessee’s prior right to conduct mineral operations on the property, subject only to the sublessee’s right to seek reimbursement for damages from the mineral lessee. In this connection, we note that the sublessee, F. Jackie Comb, testified as follows:[2]
“Q. When did you begin farming the property that he testified about?
A. 1983.
Q. Tell the Court what problems you knew existed with the property that would interfere with your farming that land.
A. There might be problems with the possible drilling. There wasn’t any drilling where we were, but they had drilling around the area.
Q. Are you aware of any representations that may have been made to you directly regarding any possible drilling by Mr. Dugas?
A. He said there might be possible drilling, but we would be compensated.
Q. Was that unusual?
A. No, I don’t believe. I think that’s normal for the area.
Q. Has that situation ever happened to you before, sir? When I say ‘situation’, I mean drilling in a patch where you’re farming.
A. Before the Lyons Petroleum drilling?
Q. Yes, sir.
A. Yes, sir.
Q. Were you compensated?
A. Yes, sir.”
A lessor, like a vendor, may limit or modify by particular agreement the obligation of warranty. (La.C.C. art. 2503). Since a valid lease agreement may be con-fected orally (La.C.C. art. 2683), it necessarily follows that in such cases any limitation of warranty will be oral. Therefore, the issue presented for review in this case is essentially factual. A trial court’s determination of fact will not be disturbed on appeal unless the record does not furnish a sufficient basis for the finding of fact or unless the finding of fact is clearly wrong or manifestly in error. Trahan v. State, *1133 Dept. of Transp. and Dev., 536 So.2d 1269 (La.App. 3rd Cir.1988), writ denied, 541 So.2d 854 (La.1989). We find no clear or manifest error in the trial court’s resolution of the issue presented.
Finally, we observe that Richmond, supra, lends support to the trial court’s determination. Richmond essentially holds that “... an undisclosed mineral lease which produces on the property ample signs of its existence is a real charge of which it is the buyer’s business not to be ignorant and against which he cannot claim warranty ...”. By analogy, it is clear that a lessor’s disclosure of the right of others to conduct mineral operations on the property in disturbance of a predial lessee’s subsequently acquired right gives rise to no claim of eviction by the predial lessee.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the Combs.
AFFIRMED.

. The instrument whereby the Combs released Lyons is made a part of the record. Our affirmation of the trial court’s judgment in this essentially factual matter renders unnecessary our consideration of the effect of the Combs’ release of Lyons on the Comb’s right to seek reimbursement from Dugas. See La.C.C. arts. 1829(3) and 1803.

. Although Michael and Rickie Comb did not testify, it was stipulated that were they called to testify their testimonies would be the same as F. Jackie Comb.